SILVER & CO., Inc., v. S. STERNAU & CO., Inc. (two cases).

(Circuit Court of Appeals, Second Circuit. April 16, 1919.)

Nos. 203, 204.

1. PATENTS ⊚═328—INFRINGEMENT—COLLAPSIBLE STOVE.
    The Ferdon patent, No. 1,199,257, for a collapsible stove, is limited to the particular means shown for keeping the legs in open position when in use, and, as so construed, held not infringed.

2. PATENTS ⊚═226—INFRINGEMENT—PRACTICAL IDENTITY.
    Infringement should not be determined by the mere decision that the terms of a claim of a valid patent are applicable to defendant's device, but the question involves considerations of practical utility and substantial identity, and that must be quantitative as well as qualitative.

3. PATENTS ⊚═328—VALIDITY AND INFRINGEMENT—COLLAPSIBLE STOVE.
    The Ferdon patent, No. 1,229,432, for a collapsible or knock-down stove, held void for lack of invention, and also not infringed.

Appeals from the District Court of the United States for the Southern District of New York.

Two suits in equity by Silver & Co., Incorporated, against S. Sternau & Co., Incorporated. Decrees for defendant, and complainant appeals. Affirmed.

Stephen J. Cox, of New York City, for appellant.
John Robert Taylor, of New York City, for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. Both suits between the litigants were tried together in the lower court and are presented here in a single record upon this appeal. Both will be treated in one opinion.

The first action is based upon patent No. 1,199,257, issued September 26, 1916, to the appellant's assignor. The second action involves the alleged infringement of patent No. 1,229,432, issued June 12, 1917. Both patents were issued to Guy W. Ferdon. The appellant refers to the first as a kitchenette patent and the second as a collapsible stove. Each patent, however, refers to the invention as a collapsible stove.

Claim 1 alone is involved in action No. 1, while claims 7, 8, and 9 are involved in action No. 2. After the trial, the District Judge dismissed the suit on the first patent on the ground that infringement was not established. In the action for infringement upon the second patent, the patent was held void for lack of invention.

[1] Claim 1, of patent No. 1,199,257 reads as follows:

"In a support for heaters, in combination, a hot plate, legs hinged to the underside of said plate, and adapted to be folded against said plate, means adapted to fold against said legs for keeping said legs in open position, and means when the device is in use, for supporting heating devices in proper relation to said hot plate."

The inventor says that his invention relates to collapsible stoves or heaters, and particularly to a device to be used for cooking with alcohol lamps, whether the lamps be those which use solid or liquid alcohol. He does not restrict his device to the use of this particular fuel, and says that lamps supplied with other solid liquid or gaseous fluid may be employed in connection with the device. He refers to his invention in his specification as a folding stove of the kind that can be folded into a small package and carried about in an automobile kit by hand or as an article of luggage, which may be instantly set up for picnic or other cooking. It is quite apparent, from this record, that the recent increase in the use of solid alcohol for cooking purposes, a field which has been entered extensively by the parties to this litigation, gave rise to the need for small folding stoves. The idea of collapsibility at the date of the issuance of this patent was very generally resorted to in the cases of articles for transient use, such as card tables, ironing boards, folding beds, and folding chairs, and articles and structures in which it was sought to secure compactness of bulk. Other collapsible articles were dining room tables, pianos, bureaus, and bedsteads. This record demonstrates that in the stove art the structures have been made to collapse for use in camping or for motoring, the idea being to provide for collapsing or knocking down to reduce the bulk in transportation. Examples of such collapsibility are found in the prior art in the patents issued to Cook, Morawetz, Swinney, and Pjerron.

This patent discloses a structure comprised of two separate and distinct parts, the stove proper, which may be folded, and the shelf, which is separate therefrom, and which cannot, in any sense, be said to be foldable. It comprises a hot plate, made of thin sheet metal and provided with openings and grates of the usual type. The hot plate is bent or turned around its edges for the purpose of connecting a wire

to form a stiffening flange. To the underside of the hot plate is attached, at each of the four corners, a wire eyelet. Connected to each of these wire eyelets is a piece of wire so bent as to produce a number of wire legs at opposite ends of the hot plate and formed with a wire link or reach connecting each pair of legs. The wire link is bent upwardly, so as to form a ledge or rest for the separate sheet metal lamp-supporting shelf, which may be, placed and used for holding the heating devices it is desired to utilize. To each of the four legs is pivotally attached a wire bracket formed of a single piece of wire. The two wire brackets at each end of the structure may be folded against the wire legs to which they are pivotally connected. The brackets and legs can be folded inwardly upon the underside of the hot plate. When setting the stove up, the legs are opened outwardly, the brackets are extended, and then the brackets are forced into engagement with clips or locks formed on the underside of the hot plate, midway of its length, for the purpose of bracing the structure to give stiffness and rigidity to the legs and to support the hot plate. The shelf is then rested in a position upon the connecting wire links extending between the pair of legs located at each end of the hot plate, and is firmly held there. The specifications provided that, when folded, the shelf is removed and laid alongside the parts folded together. The wind shield, a separate part, is often sold commercially with the appellant's device.

In the original claim in the Patent Office, as the structural element, it was not provided for "means adapted to fold against said legs for keeping said legs in an open position," but it was provided as "means for keeping said legs in open position." The Patent Office, granting the patent, however, allowed the claim as "means adapted to fold against said legs for keeping said legs in open position."

In the defendant's device, the means for keeping the legs in open position are not adapted to fold against the legs, but to fold against the top plates, to which they are hinged. When folded, they do not rest against the legs, but are placed in close position side by side to the legs, making a compact heater, and thus saving space in transportation. Appellant's specifications do not describe or illustrate any means for keeping the legs in open position which are adapted to fold against said legs. The brackets, which are adapted to fold against the legs, and which are intended to constitute the "means" provided in claim 1, do not, of themselves, perform the function of keeping the legs in open position. It is only when these brackets are swung into position beneath the clips or lock, and there held pinched against the underside of the hot plate, that sufficient rigidity is afforded to keep the legs stiff and in open position. The clips or lock device is the essential feature of the structure, in co-operation with the brackets, to keep the legs in open position. They are not adapted to fold against said legs. The shelf cannot be considered the means for giving rigidity to the legs. According to the specifications, it serves another purpose.

In the claim as originally filed in the Patent Office there was cited against the appellant the British patent, No. 13,312, A. D. 1912, to

Irving and Anderson. This disclosed a hot plate, legs hinged to the underside of the plate and adapted to fold against the plate, and means when the device is in use for supporting heating devices in proper relation to said hot plate. The only difference between the claim of the patent in suit and the British patent resides in the means adapted to fold against said legs and keeping said legs in open position. The heating device in the Irving patent acts as a support for the heating apparatus and keeps the legs in open position. We think that the Ferdon invention is limited to a particular form or kind of means adapted to fold against said legs for keeping said legs in open position.

In view of the state of the art, particularly the Irving and Anderson patent, the appellant's claim must be read with no range of equivalents, at least such as would be permitted if defendant's structure was held to be an infringement. The defendant manufactures a folding kitchenette, having a wind shield and shelf integrally constructed therewith, and having no separate parts of any kind. It is made of sheet metal, and no wires are employed in its construction. It has the hot plate, with the necessary openings. The top plate is supported by three sheet metal sides, comprising two end supports and a side support. The end supports, beside constituting a wind shield, act as legs. The wind shield is provided with a horizontally disposed sheet metal shelf, provided with two openings which, when the device is assembled, are positioned beneath and in line with the openings on the top plate. In order to prevent the legs of the stove from collapsing, it is necessary to lock them against longitudinal movement. It has no means which are adapted to fold against the legs for keeping said legs in open position. It does have a wind shield hinged to the top plate and adapted to fold against the under side of the top plate. The wind shield does not keep the legs or supports in open position. The legs or supports are kept in open position by co-operation of a key upon the outside of each with the end supports, which engage with a tenon passing through a keyhole located in each of the end supports; tenons being formed on the ends of a centering shelf, which is hinged upon the wind shield to keep the legs open and the device in operative position.

[2] Appellee's structure requires the co-operative action, therefore, of these different elements. Infringement should not be determined by a mere decision that the terms of a claim of a valid patent are applicable to the defendant's device. The question of infringement involves considerations of practical utility and substantial identity and, that must be quantitative as well as qualitative. Edison Co. v. American Mutoscope & Biograph Co., 151 Fed. 769, 81 C. C. A. 391; Goodyear Co. v. Spalding (C. C.) 101 Fed. 990.

We think the District Judge very properly held that there was no infringement. The decree in this action is affirmed.

[3] In the second action, involving suit for infringement of patent No. 1,229,492, the appellant contends that this is in the nature of an improvement on the device of the first patent. It appears, however to be an entirely different type of structure from the defendant's kitchenette.

The device made pursuant to this patent would appear to be a permanent liquid stove or range, such as might be used as a permanent fixture in a kitchen. Ease of collapsibility is not important in a stove of such character or for such use. It is collapsible in the sense that it might be said to be of the knock-down type, so as to be readily shipped or transported by the manufacturer or in moving from house to house. The specification says:

"The object of the invention is to provide an oil stove of the usual blue flame kind which can be shipped knock-down."

It consists of four parts, a stand or table, a drip pan, reservoir for the oil, and the stove proper. The stand or table consists of two bars extending lengthwise, to which are connected at the end a pair of braced legs; the legs being adapted to fold down upon the connecting bars. The top of these legs are provided with feet upon which the legs, forming part of the stove proper, which constitutes the separate part of the structure, are adapted to rest. The stove legs are provided with corresponding feet, and these two parts of the apparatus, the stove and the table, are fastened together with bolts and nut connection through the holes in the feet and the other respective parts. The drip pan is located below the top plate and secured to the legs by bolts and nuts. In disassembling the parts, it is necessary to remove the bolts and nuts which serve the means of connecting the stand or table of the stove.

While this structure may be termed a knock-down one, it is not in any sense a folding structure; the only folding or collapsible parts being the legs of the stove and the legs of the stand. Constructing a knock-down stove under claims 7, 8, and 9 of this patent presents no novelty or invention. Such construction was well known to the prior art. The appellant shows in its patent, heretofore considered, the hinging of the top plate. It is also shown in the Irving and Anderson patent, No. 13,312, A. D. 1910. There is nothing to indicate any commercial success because of this method of assembling parts of a stove.

We think that as to this patent in suit there is neither infringement nor even invention.

Decree affirmed.