WISCONSIN–MINNESOTA GAS & ELECTRIC HOUSEHOLD APPLIANCE CO. v. HIRSCHY CO. (two cases).

Circuit Court of Appeals, Eighth Circuit. October 11, 1928.

Nos. 7852, 7853.

Merrell E. Clark, of New York City (Frank D. Merchant, of Minneapolis, Minn., on the brief), for appellant.

A. C. Paul, of Minneapolis, Minn. (Paul, Paul & Moore, of Minneapolis, Minn., on the brief), for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and PHILLIPS, District Judge.

VAN VALKENBURGH, Circuit Judge. Appellee is the owner of letters patent No. 1,399,482, issued December 6, 1921, to Herman C. Hirschy for new and useful improvements in clothes wringers. In his specifica-tion the appellee thus described the nature and object of the invention:

"In the operation of a clothes wringer, provision is made for quick release of the action of one wringer roll upon the other to avoid injury to the fingers or hand of the operator and to enable the operator to with-draw any article from between the rolls dur-ing the wringing operation. Generally in these wringer rolls releasing devices the low-er roll is positively driven and continues its operation when the rolls have been separated and it is desirable to positively stop revolu-tion of the lower roll when the wringing op-eration ceases.

"The object of my invention is to provide a driving means which, when the rolls are separated, will be automatically disconnected until the two rolls are again adjusted in their working position."

Claim 1 of the patent, which is the only one involved, reads as follows:

"A clothes wringer comprising a frame having a normally fixed section and a mov-able section hinged thereto, a roll journaled in said fixed section, a roll journaled in said movable section and adapted to be moved with said movable section to a non-working position with respect to said fixed section roll, mechanism spaced from the fixed section roll for normally driving both rolls through the shaft of the movable section roll and be-ing rendered inactive for driving either roll upon movement of said movable section and its roll from said fixed section roll."

In his testimony the appellee described his contribution to the art in the following language:

"The only addition that I have made to the machine of some other inventor is in the arrangement of the gears. That is, the only thing I have contributed is to arrange the gears so that power is applied to the two rolls through a gear on the shaft of the mov-able roll, and rearrangement of the power shaft and the gears make that possible. In the final analysis, this is my contribution:

"In two roll machines, in which one of the rolls is movable away from the other roll, I applied the power through a gear on the end of the shaft of the movable roll so that when the movable roll is lifted away from the other roll, the power is automatically thrown off both rolls. That is my contribu-tion."

Appellant is charged with infringement of this claim of the patent. Its defense is that the claim in suit is invalid for want of invention and for anticipation, and that if

valid it is so limited in scope that it is not infringed by defendant's structure. In cause No. 7852 the trial court found the issues for the appellee. We shall consider first the defense of invalidity. At the time of the issuance of this patent there were in the prior art a number covering clothes wringers of various types; among them may be mentioned that issued to Browning, No. 180,837; to Stocking, No. 1,247,894; to Snyder, No. 1,316,601; and to Bailey and Couch, No. 34,-178. It was the general practice, prior to the device of appellee, to mount the wringer rolls, one above the other, in a suitable frame with means for applying power to the lower roll, from which, by means of intermeshing gearing, the upper roll was driven. These gears were originally operated by hand, but this method was ultimately succeeded by automatic power generated by electricity. This change introduced an element of danger both to the operator and to the garments passed through the machine. If the hand or the clothing of the operator were caught in the machinery, instantaneous release was necessary to avoid injury more or less serious. So, likewise, if the garments, passed through the wringer in the course of operation, should, by accident, get caught around the rolls, a quick release would be necessary to prevent the destruction of the garment and possible injury to the machinery itself. To provide such effective means was the object and gist of Hirschy's invention. In previous inventions means had been uniformly provided for applying power to the lower or stationary roll. It will be seen that, when the power is applied to the upper movable roll, it is rendered inactive for driving either roll when the movable roll is raised and separated from the fixed lower roll. In this manner a sufficiently wide space is created between the two rolls permitting the hand or garment involved to be removed without further injury. The presence of a tripping device enables the rolls to be separated thus instantly.

Appellant for anticipation relies mainly upon three prior patents: That of Snyder, numbered 1,316,601; the Fillingham patent, numbered 694,096; and the Stocking patent, numbered 1,247,894. The others may be dismissed without further consideration.

The Snyder patent was for an improvement in wringers and had a number of specified objects. Among them was the removal of much of the mechanism projecting upwardly a considerable distance among the rolls; also to avoid the necessity of displacing various springs, pressure plates, or other parts, which must be reassembled before the wringer could again be put into operative condition after releasing the tension of the wringer rolls. Another object was to provide a wringer in which the upper roll might be swung away and widely separated from the lower roll to lay both rolls open for inspection, cleaning, or removal of any material which may become wound in them in the operation of the machine, or for other purposes. Claim 1 of the patent fairly discloses this feature of the invention:

"A wringer comprising two pairs of arms hinged together, a wringer roll in each pair of arms, resilient means for forcing said pairs of arms together and a single means for instantaneously and completely releasing one pair of said arms, whereby the same may be swung back on its hinge completely free from the other pair of arms and the releasing means."

It will be seen that while one pair of arms may thus be swung away from the other, no means are disclosed for simultaneously throwing the power off both rolls.

The Fillingham patent relates to a "safety stop motion for grinding machines" and may be adapted generally, as the specifications say, to machines using two heavy rolls between which the hand of an operator is liable to be caught while feeding or tending the machine. The patentee says: "The important feature of my invention is that the rolls may be stopped easily and quickly without stopping the rotation of the driving shaft."

This result is accomplished by means of eccentric bearing sleeves. Because of the operation of these eccentric sleeves the rolls are not separated and the hand released instantaneously, but a revolution of from one-fourth to one-half turn of the rolls before the rolls separate is required. This period of contact is sufficient to cause serious injury before the hand of the operator can be released. The operation of the Fillingham device differs widely from that of the patent in suit, and the result obtained is far less prompt and effective. But appellant does not seriously contend that either of these, standing alone, constitute a complete anticipation of Hirschy's invention.

The witness Doughty, an engineer in appellant's employ, and the patentee of patent numbered 1,542,439, under which appellant seeks to operate, makes this very clear in his testimony. He says, speaking of the Fillingham machine:

"The release is not instantaneous, and it never exceeds the thickness of that eccentric, that is, the movement never exceeds the

thickness of that eccentric. And that position of the roll is always a rigid position. And if the hand gets in between the rolls the roll begins—the movable roll begins to move away and it takes a quarter, and I say a half turn, of the roll to get the roll out of its farthest position and for the roll to stop its movement. * * *

"Q. Before the two rolls would be completely separated, and if the operator's hand were in there, and moving with the roll, the hand would move 2½" with the roll before the rolls were separated.

"A. Approximately."

And, again:

"The Snyder patent is an older patent than the Hirschy patent. It is my belief that so far as the mounting of the rolls and the releasing of the rolls, Hirschy showed nothing new. If I were to apply the Fillingham principle to a wringer of the Snyder type, for example, I would make a wringer very similar to the Hirschy wringer. I would apply—well, I would cut off the shaft of the lower roll of the Snyder wringer, and in its place apply a shaft carrying a gear, and from that gear I would mesh with the gear directly above it on the upper or movable shaft, or the shaft of the upper roll—the shaft of the movable roll. I think you would then have the Hirschy wringer or the Fillingham device. Then I would have absolutely the Fillingham principle applied to, for example, the Snyder patent.

"In the Snyder patent—the lower roll is always driven. What I am proposing to do is to change it so that it would not be driven directly from the power, but through the upper roll. I would retain the Snyder supports for the upper roll. I would retain his swinging arms for the upper roll. I wouldn't use eccentrics if I were applying the Fillingham principle to the Snyder construction. * * *

"Q. But in order to make up the Hirschy device, having seen the Hirschy device,—you are going to take Snyder, and then you are not going to take what Fillingham shows and describes and claims, but you are going to change from Fillingham?

"A. I am going to take the essential features of Fillingham and apply them to Snyder. * * *

"Q. You think you could take the Snyder device and the Fillingham device, and taking parts from one and parts from the other, you could put them together and make a Hirschy machine?

"A. Yes."

This practice of building up anticipation by changing and combining parts of structures of prior patents cannot be indulged. In Detroit Motor Appliance Co. v. Burke (D. C.) 4 F.(2d) 118–120, the court said: "It must be borne in mind, in considering these prior patents as anticipations, that it is not permissible to modify the structures disclosed by such patents, and then claim the modified structure as an anticipation." This statement is supported by many cited cases.

It is argued, however, that the disclosures of the prior art are such that the device of the patent in suit was readily suggested and that the arrangement of the gears, whereby the object of the patent was obtained, does not amount to patentable novelty and invention. The patent to Stocking is urged in support of this contention. A copy of this patent was offered in evidence, but, at the trial, received practically no attention, as disclosed by the record. This patent is likewise for a clothes wringer. The inventor states that one object of his invention is to provide a construction of release, with means for operating the catches employed for holding the top bar in predetermined position simultaneously, so that both ends of the top bar will be released at the same time in order to allow the pressure roll to be moved vertically by the raising springs and maintained in a horizontal position within the frame. Another object was to provide a clothes wringer with raising springs, disposed between the pressure roll carrying shafts, in such a manner that, when the pressure is released, the springs will expand so as to raise the upper roll bodily away from the lower roll. An examination of the patent discloses that the Stocking device not only differs from that of Hirschy in many important particulars, but operates upon an entirely different principle and produces a decidedly inferior result. It has no hinged section, and applies the power to the lower or fixed section. No means are provided for the instantaneous separation and stoppage of both rolls. Such release as is effected is accomplished by the interposition between the rolls of some object (either the hand of the operator, or a bunch of clothing) of sufficient thickness to force the rolls apart to an abnormal extent, after which the co-operation of a number of members may function to stop the rotation of the rolls. It will be seen at a glance that, before the release desired can be obtained, serious injury to hand or garment may result. In our judgment the

patent to Stocking operates neither as anticipation, nor as a cloud upon the inventive quality involved in the patent in suit. The advance in the art effected by Hirschy was a highly important one; one that contributed materially to the safety of those operating these machines and to the efficiency of such operations. The dangers attending the use of wringers actuated by electric power had been recognized and voiced, but no structure, prior to that of Hirschy's, had accomplished the desired result in a manner at all satisfactory. We conclude that the patent in suit discloses invention, was not anticipated in the prior art, and is, therefore, valid.

We come next to the defense of noninfringement. In order that the analysis of appellant's structure may be better understood it is desirable that the claim which it is alleged to infringe may be separated into its constituent elements. These are:

"(1) A frame having a normally fixed section and a movable section hinged thereto,

"(2) A roll journaled in said fixed section,

"(3) A roll journaled in said movable section and adapted to be moved with said movable section to a non-working position with respect to said fixed section roll,

"(4) Mechanism spaced from the fixed section roll for normally driving both rolls through the shaft of the movable section roll,

"(5) And being rendered inactive for driving either roll upon movement of said movable section and its roll from said fixed section roll."

Figure 1 of defendant's wringer attached to the patent is as follows:

In the specification the patentee Doughty used this language:

"Referring to the drawing, 10 represents the wringer frame which may be secured to a washing machine or other suitable support in any desired manner. The wringer rolls 11, 12, are mounted in bearing blocks 13, 13, and 14, 14, respectively, which are slidably mounted in the frame 10.

"The bearing blocks 13, 13, and the upper roll 11 are normally held positively in position in the following manner. The top of each of these bearing blocks is provided with a track or race 15 within which rides the boss 16. Each of these bosses 16 is at the end of a projection 17 extending downwardly from the hinged cover 18 which is normally retained in the closed position illustrated in Figs. 1 and 2 by means of the latch 19 to which further reference will be made later. As long as the cover 18 is closed, the bearing blocks 13, 13, and the roll 11 will be held positively in position. * * *

"The power for driving the rolls may be derived from any suitable source, as, for example, an electric motor. This power is applied to the power driven gear 30 which normally meshes with the driving gear 31 for the upper roll. If it is desired to drive the lower roll as well as the upper roll, it may be provided with a driving gear 32 (Fig. 3) meshing with the driving gear 31 of the upper roll, the latter being wide enough so that both gears 31 and 32 can mesh with it. The teeth of the gears 31 and 32 are of such design that the usual separation of the rolls caused by passing clothes there between does not throw them out of mesh. * * *

Fig: 1.

"When it is desired to separate the rolls, as in the case of an emergency when the operator's fingers have been caught between them, the latch *19* is released by depressing the handle or lever *42* (Figs. 1 and 2). This immediately relieves the pressure between the rolls and, because of the action of the spring *42'* (Figs. 1 and 6) the cover immediately opens wide, into the position shown in Fig. 4. In so moving the cover carries with it the upper roll whose bearing blocks, as above described, are connected to the cover through the projections *17* of the cover and the races or tracks *15* of the bearing blocks. This upward movement of the upper roll not only leaves a wide space between the two rolls in which no part of the operator's anatomy can possibly be caught, but also, by separating the driving gear *31* from the power driven gear *30* (and from the driving gear *32* if one be used) it also shuts off all power from the rolls."

It will be noted that precise elements corresponding to Nos. 1, 2, 4, and 5 of claim 1 of the patent in suit are present in appellant's structure as disclosed by the drawing and described in the specification. The contention of appellant arises over the third element, to wit, "a roll journaled in said movable section and adapted to be moved with said movable section to a non-working position with respect to said fixed section roll." It will be observed that the movable roll, instead of being journaled substantially in the hinged cover, as in the patent in suit, in appellant's device is journaled in bearing blocks *13, 13,* which are slidably mounted in the frame *10.* This is urged as a crucial distinction. But it will be further observed that the top of each of these bearing blocks is provided with a track or race *15* within which rides the boss *16.* A boss in mechanics is an enlargement of a shaft to couple with a wheel or other shaft and is a projecting part which is used as the seating for another attachment. Each of these bosses is at the end of a projection *17* extending downwardly from the hinged cover *18.* When it is desired to separate the rolls as in the case of an emergency when the operator's fingers have caught between them, the latch *19,* which holds down the hinged cover, is released; thereupon, the hinged cover immediately opens wide and, in so moving, the cover carries with it the upper roll whose bearing blocks are connected to the cover through the projection *17* of the cover and the races or tracks of the bearing blocks. To our minds this operation is produced by means and elements equivalent to those employed in the patent in suit. The claim no-

where limits the movable roll to being journaled in the hinged cover. It simply requires that it shall be journaled in the movable section, and certainly the bearing blocks attached, as they are, to the projection of the cover, and moving with the cover when it is raised, form a part of the movable section within the plain meaning of the language of the claim; this being so, the claim reads upon appellant's device and is infringed by appellant's structure. The trial court so found in a very able opinion, and in that finding we concur. This disposes of the contentions urged in cause No. 7852, and it results that the decree in that cause should be and is affirmed.

We come now to cause No. 7853. After the decree had been entered in cause No. 7852, and the injunction ordered had become effective, appellant put out another wringer which it was advised did not infringe. Appellee moved the court to punish appellant for contempt in violating the permanent injunction theretofore issued. Upon hearing, the court adjudged appellant to be guilty of contempt of court by the use and sale of wringers thus offered for sale under this new construction. The court further refused to order that appellant be fined, but awarded the costs to appellee. Appellant had simultaneously moved for a suspension of the permanent injunction as applied to the new construction under consideration. This motion was denied in the same order. From this action of the court the appeal in cause No. 7853 is taken. It is contended by counsel for appellee that this is not strictly an appealable order. We think, however, that in accordance with the reasoning of the Circuit Court of Appeals for the Sixth Circuit in Monroe Body Co. et al. v. Herzog et al., 13 F.(2d) 705–706, this court may take cognizance of the appeal and may determine whether this later structure of appellant comes within the purview of claim 1 of the patent and whether appellant was in contempt in using and selling it after the injunction in the main case had become effective. The matter resolves itself into a determination of the scope of claim 1 involved, and of whether the new structure infringes that claim. These questions are presented as fully as they could be by independent suit for infringement, and it is entirely desirable that the matter should be disposed of in this proceeding. That really is the only question presented. In the contempt proceeding no fine was imposed and no judgment other than for costs awarded. No other question is of interest to either party. We shall, therefore, consider the mat-

ter primarily upon the basis of infringement or noninfringement. We herewith incorporate in this opinion Figures 1 and 2 of appellant's later device, introduced as Plaintiff's Exhibit C–3:

section. The following statement is made in the brief of counsel for appellee: "It is conceded that no machine will infringe this claim unless it does have a movable section hinged to a fixed section, the fixed section

FIG.2

FIG.1

It will be seen that the cover *18* of the prior structure is omitted. We still have a frame having a normally fixed section, a roll journaled in said fixed section, and mechanism for driving both rolls through the shaft of the movable section roll; we also have a movable section, and the mechanism for driving both rolls is rendered inactive for driving either roll upon movement of said movable section and its roll from said fixed section roll. The movable roll is still journaled in bearing blocks as before. Appellant conceives that the elimination of the hinged cover removes a material element of the claim and avoids infringement. This claim is founded upon proceedings in the Patent Office, from which it appears that this patent was granted only upon the consideration that the movable frame section must be hinged to the fixed

having a roll journaled therein and the movable section having a roll journaled therein. It is submitted, however, by plaintiff that if any machine has these essential elements, it will not escape infringement because of any change in the form, shape or position of such sections."

It must be conceded that the hinged element is not restricted to the cover, but comprehends the entire movable section. We have already decided that the former structure, involved in cause No. 7852, which included the cover now abandoned, responded to the reading of the claim in this particular. It remains to be considered whether the removable section, as now constructed, is hinged to the fixed section within the meaning of the claim.

In the new structure the movable roll can-

not be lifted from contact with the lower roll by hand when the hinged cover is released by the tripping device; but this feature is no element of the invention. The separation of the rolls is accomplished by means of a spring which actuates the arms or levers by which the movable section is raised. This was the operation in appellant's former structure, which structure, in cause No. 7852, we have held to infringe. The specification of patent numbered 1,542,349 contains the following description of that movement:

"When it is desired to separate the rolls, as in the case of an emergency when the operator's fingers have been caught between them, the latch 19 is released by depressing the handle or lever 42 (Figs. 1 and 2). This immediately relieves the pressure between the rolls, and because of the action of the spring 42' (Figs. 1 and 6) the cover immediately opens wide, into the position shown in Fig. 4.

In the latest structure under consideration, the movable section, as we have construed it, is pivoted to the frame which carries the normally fixed section. It is true that this movable section is now made up of a greater number of parts involving conspicuous changes in form, but this does not alter its character as an element. As said by Judge Sanborn, speaking for this court in the Brake-Beam Case, 106 F. 693: "Mere changes of the form of a device or of some of the mechanical elements of a combination secured by patent will not avoid infringement, where the principle or mode of operation is adopted, unless the form of the machine or of the elements changed is the distinguishing characteristic of the invention. Watch Co. v. Robbins, 64 F. 384, 396, 12 C. C. A. 174, 187, 22 U. S. App. 601, 634; New Departure Bell Co. v. Bevin Bros. Mfg. Co. (C. C.) 64 F. 859." See, also, Davis Mfg. Co. v. Levin Bros. (C. C. A. 8) 8 F.(2d) 972, and cases cited.

That the movable section is attached to the frame which has a normally fixed section cannot well be denied. Inspection of the drawing (Plaintiff's Exhibit C–3) shows that the sliding blocks 13, 13, in which the movable roll is journaled, are connected by pivot pins with arms 17. Other arms 30, are pivotally connected with arms 17, and are in turn pivotally connected, and held to, the frame of the wringer by the pivots 32. When the release is tripped, a spring actuates the connected arms displayed, which lift the movable section upward. The crucial question recognized in brief and argument is whether the pivotal connection of the mov-

able section is a hinged connection. Recourse to definition is helpful.

Funk & Wagnalls New Standard Dictionary thus defines a "hinge": "A natural articulation or connection between two parts, such that one part will turn upon the other; a joint. Figuratively, a pivotal point on which anything depends for its effect or course." Of course, the familiar device is a hinge connecting a box with its lid, or a door with its jamb, but the term is not restricted to this narrow meaning. The same dictionary defines a pivot as follows: "Something (typically a pin or a short shaft, upon which a related part turns, oscillates or rotates; often a short cylindrical bearing fixed on only one end, as for carrying or rotating a swinging part. Figuratively, something on which an important matter hinges or turns; a turning point."

In Griswold v. Wagner (C. C. A. 6) 68 F. 494, Judge Lurton, in discussing the patent there under consideration, says: "A hinge is defined to be 'an artificial movable joint; a device for joining two pieces together in such manner that one may be turned upon the other.' Cent. Dict. An inspection of the model of the Harrington roaster shows that this device does operate to hold the two halves of the roaster together when rotated, and in such manner as that one-half may, when desired, be turned upon the other. This hinge forms one of the journals or pivots on which the roaster is revolved, while the united handles on the opposite side form the other journal or pivot."

It is clear from the foregoing that the pivotal connection in the latest structure corresponds to and is the equivalent of the hinged connection of the patent in suit; this being so, claim 1 of that patent reads in detail upon that new structure, and the infringement charged results.

It is true that the Hirschy patent is not strictly a pioneer patent, but appellee is entitled to such range of equivalents as will protect and preserve the principle of the invention. It may be conceded that appellant's structures (one or both) are improvements in some degree over the patented device; but this, if true, cannot aid appellant. In Temco Co. v. Apco Co., 275 U. S. 319, 48 S. Ct. 170, 72 L. Ed. 298, it is held that a claim in a patent should be construed liberally, so as to uphold and not destroy the right of the inventor, and that "it is well established that an improver cannot appropriate the basic patent of another, and that the improver without a license is an infringer, and may be sued as such."

846

It is urged by appellant that the subsequent grant of patent number 1,542,439 to Doughty is "cogent evidence of the marked difference between the two structures." To this point the language of the Circuit Court of Appeals for the Sixth Circuit in Monroe Body Co. v. Herzog, 13 F.(2d) 705–706, is applicable: "It is not of substantial importance that defendant has procured patents covering his later specific forms, as we have frequently held that such patents raise no substantial inference of noninfringement. The supposition that they do raise such inference overlooks the familiar fact that in issuing patents no attention whatever is paid to the (possibly broad) scope of the claims of former patents, but only to their specific disclosures."

It follows from what has been said that each of appellant's structures infringed claim 1 of the patent in suit, and that the decrees in both causes, Nos. 7852 and 7853, should be and the same are affirmed.