## SAMUEL M. LANGSTON CO. v. MENGEL CO.

### No. 530.

District Court, W. D. Kentucky, at Louisville.
July 5, 1932.

Clair W. Fairbank and Irving M. O'Brieght, both of New York City, for plaintiff.

Chas. F. Dane, of New York City, for defendant.

DAWSON, District Judge.

This suit involves the alleged infringement by the defendant of claim 7 of patent No. 1,489,135, issued to Samuel M. Langston on April 1, 1924, and of claims 7, 21, 26, 27, and 28 of patent No. 1,660,844, issued to the plaintiff, Samuel M. Langston Company, on February 28, 1928, on application filed by Samuel M. Langston and Karl Sieg on July 28, 1927.

The ownership of these two patents by plaintiff and the jurisdiction of this court are not in dispute.

It is quite clear from the record that there is no controversy as to the infringement of the second patent by the defendant, growing out of the use by the defendant of a machine manufactured by M. D. Knowlton Company, of Rochester, N. Y., and while defendant makes some claim that the use of this machine did not infringe claim 7 of the first patent, when properly construed, I cannot agree with this contention. While the particular machine shown in the first patent indicates that it was intended for continuous operation, claim 7 is not so restricted, and so far as I am able to judge, there is nothing in the prior art which demands that the claims be so restricted. I think the claim in its entirety can be read upon de-

fendant's machine, and that therefore defendant's machine in question infringes the enumerated claims in each of these two patents, provided these patents are not void for want of invention.

▉▉▉▉ The invention covered by patent 1,489,135 is described in the specification as follows: "This invention relates to that type of cut-off mechanism adapted for use with continuously delivered material in sheet, rod, or other analogous form, and in which mechanism the knives move back and forth in the general direction of the travel of the material, and cut and then separate while traveling with the material." '

The cut-off mechanism therein described was claimed by the applicant to be especially effective in cutting comparatively stiff material such as corrugated cardboard or paper, without causing same to buckle or tear. How this is accomplished is described by the inventor in the following language:

"One object of my present invention is to provide means whereby a given design of cutter of the type shown in my Patent 1,359,076, granted Nov. 16, 1920, may be used to cut longer or shorter sections in a satisfactory manner with the cutter maintained in continuous motion. In this type, one knife moves back and forth in the same path, substantially parallel to the line of feed, while the other knife is carried by a member pivoted to the carrier of the first mentioned knife. I accomplish my object by increasing or decreasing the speed of the feed of the material so that the desired length will pass a given point in the fixed time period of a cycle of the cutter, and I vary the speed of the cutter in the cutting part of its cycle to agree approximately with the speed of the material, but without changing the mean or average speed of the cutter or its time for a complete cycle.

"By providing for the continuous but non-uniform movement of the crank which operates the knives, said knives may have their rate of travel during the cutting action substantially the same as that of the material, but the return movement of the knives while separated will be at a very much slower or faster rate, depending upon the length of the desired sections. Thus, if longer sections are desired, the cutters may move fast with the material during cutting, and move at a slower rate during the return part of the cycle, while if shorter sections are desidered, the cutter may move slowly with the slower moving material during cutting, but have a very much faster return movement.

In other words, each knife moves continuously in its cycle, and always completes a cycle in a given time period, but the rate of movement of each knife during the cutting portion of its cycle will agree approximately with the faster or slower moving material, and during the remainder of the cycle will be such as to complete the cycle on time.

"A further object of my invention is to provide mechanism whereby speed of the cut-off knives during the cutting action may be easily and quickly changed in respect to mean speed for the complete cycle of movement, to accommodate the cutting action speed to different speed of sheet delivery and corresponding variation in the length of the cut-off sections."

Claim 7 of this patent reads as follows: "A cut-off mechanism, including a crank shaft, a member mounted to move back and forth in the same path substantially parallel to the direction of feeding movement of the material to be cut, a second member pivotally connected to the first mentioned member and to the crank of said crank shaft, a pair of co-operating cutters carried by said members, a drive shaft, and a pair of elliptical gears connecting said drive shaft and said crank shaft, and imparting to said knives a widely varying speed during their cycle of operation."

The machine shown and described in the patent had a traveling cut-off driven through a crank shaft, and elliptical gears operating continuously. A clutch drove the main machine and the material feeding mechanism, but as there was no separate clutch for the cut-off mechanism, that mechanism could not remain at rest while the material to be cut fed through to the predetermined length of cutting. No target in the path of the moving material was provided, nor was there any brake to stop the cutter in any particular position.

Some of the objections to this character of structure are described in the specifications for patent No. 1,660,844 in the following language: "One great difficulty which has been encountered heretofore in the control of cut-off mechanism is in securing uniformity in the length of the cut-off sections during variations in the speed of the machine. If the machine be set for a given length of cut-off section at a given speed, the length will be different if the speed be changed. This has required a manual readjustment of the position of the target each time the speed of the machine is increased or decreased, and has also resulted in certain

waste during the acceleration to the desired speed on starting, and deceleration in stopping. This is because there is a substantially constant time interval between the instant the sheet strikes the target and the instant when the clutch is engaged, irrespective of the speed of operation of the machine. Therefore, at high speed operation more material will pass a given point during this constant time interval than is the case during slow operation, and the cut-off sections will be correspondingly longer."

The inventor described how this difficulty is remedied in the mechanism covered by patent 1,660,844:

"Another object of the present invention is to avoid this difficulty and automatically insure uniform length of section irrespective of the speed of the machine.

"In securing this object we provide means for automatically varying the position which the cutter occupies during the rest position in accordance with the speed, so that for high speed of sheet travel the cutter moves through a shorter distance from rest position to cutting position, and during a slow speed of sheet travel it moves through a longer distance from rest position to cutting position. Thus the time interval between target operation and actual cutting is varied and is made proportional to the speed of travel of the sheet. As a result of our invention high speed of sheet travel is accompanied by quick cutting, and low speed is accompanied by delayed cutting, so that the length of the cut-off section is kept constant, readjustment of the target on changes of speed is not necessary, and waste of material due to variations in the length of the sections is avoided.

"Although our invention may be employed for the control of various types of cut-off mechanism, the preferred form hereinafter described and which involves various novel minor features of our invention, has been designed for the control of a cut-off mechanism described and claimed in the Langston Patent 1,359,076, dated November 16th, 1920. This cut-off mechanism is preferably driven by elliptical gears as described and claimed in the Langston Patent 1,489,135, dated April 1, 1924."

Specifically this difficulty was met by adding to the combination of Langston patent 1,489,135 a clutch between the feed and the cut-off so as to permit the material to continue feeding while the cut-off is at rest; a brake for the cut-off and a timing mech-

anism for starting the cutter from a fixed point in its cycle and for stopping it with the elliptical gear in slow speed driving position, and while the upper knife or cutter is in its fastest and downward movement.

Claims 7, 21, 26, 27, and 28 of this last patent call for the addition of each of these elements to the combination covered by Langston patent 1,489,135.

I think the record abundantly sustains the plaintiff in its contention that the cut-off mechanism described and claimed by these two patents filled a long-felt need in the corrugated paper industry for a cut-off mechanism of great speed, accuracy, and durability.

█ Its prompt acceptance by the trade is conclusive proof of its utility, and persuasive evidence of its novelty.

█ It is true that every element used in the combination was old and its individual function and in many combinations was well known; but a careful study of the evidence and of the prior art, as disclosed by the record, fails to convince me that plaintiff's combination of these elements does not involve invention. Combinations of old elements may constitute invention, provided the combination produces a new and useful result, or the same result in a materially better way. I think the combination involved here meets this test.

In view of the prior art and with the accomplished fact before us, it is easy at this time to say that the combination involved here called for no more than the application of mechanical skill, but mechanical skill in the art had not worked out the combination disclosed by these patents, nor solved the problem the combination was designed to solve, although there was a very great demand in the trade for a cut-off mechanism which could operate with greater speed and accuracy and stand up under such operation.

The demand, the failure theretofore to meet it, the ready acceptance by the trade of plaintiff's cut-off, when it came upon the market, argue eloquently in favor of invention and, when considered in connection with the presumptive validity of the patents, impel me to hold against defendant's contention of lack of invention. See Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523.

I find no merit in the contention advanced by the defendant in its brief that the plaintiff must be denied relief because it comes in-

**154**

to court with unclean hands, on account of alleged false markings on the name plate attached to its machine, in violation of paragraph 3 of section 4901, U. S. Revised Statutes (35 USCA § 50, par. 3). Even if a violation of this statute is available as a defense in an infringement suit, it has no application here: First, because this statute by its express terms applies to falsely marking an unpatented article; and, second, because there was no false marking of the machine here involved. The name plate put in evidence states that the machine to which it was attached is "covered by one or more of the following United States patents," and one of the patents enumerated is 1,489,135.

Plaintiff is entitled to the usual injunction, and the question of an accounting will be taken up with counsel at their convenience.

A decree conforming to the views herein expressed may be prepared by counsel and presented for entry.