**SAMUEL M. LANGSTON CO. v. F. X. HOOPER CO., Inc.**

No. 2106.

District Court, D. Maryland.

Oct. 11, 1934.

Charles Silver, of Baltimore, Md., and Clair W. Fairbank (of Dean, Fairbank, Hirsch & Foster), of New York City, for plaintiff.

Robert Watson, of Washington, D. C., and George E. Kieffner (of Stewart, Pearre & Kieffner), of Baltimore, Md., for defendant.

CHESNUT, District Judge.

This is a patent infringement suit in equity in usual form. The defences are (1) the invalidity of the plaintiff's patents and (2) non-infringement. The defendant also sets up a counter claim based on alleged improper advertising by the plaintiff but it was not pressed.

In view of the extended findings of fact which have been made, this opinion will be limited to the dominant legal questions involved in the case.

The plaintiff's patents cover a device made and called by it a "running register" for printer and slotter machines. Its United States patents Nos. 1,850,800 and 1,850,802 (hereinafter referred to at times as the "800" patent and the "802" patent) were issued on the same day, March 22, 1932, on applications therefor filed respectively November 12, 1930 and July 30, 1931. The first application was required by the Patent Office, by reason of

its generic nature, to be divided and the second application is a continuation of the initial subject matter. The plaintiff and defendant are, and for many years past have been, the principal competitors in the field of manufacture of printer and slotter machinery. The "running register" is a device whereby the so-called "set-up" time of the machine is materially reduced, and minor adjustments in registry may be made during the operation of the machine, with the result that the per diem production has been greatly increased from what was possible before the adoption and use of the "running register." Prior thereto necessary adjustments could be made only by stopping the operation of the machine. The need for the running register had long been felt by manufacturers and users of this type of machinery and the plaintiff's device immediately was adopted by the trade as a very valuable addition to the machines so that all machines of this type now sold by the plaintiff and the majority of those sold by the defendant contain the added device. When the plaintiff's "running register" was first brought to the defendant's attention it deprecated its utility but very shortly thereafter made a device of a similar nature and obtained a patent (No. 1,868,385) thereon issued to one Greenwood, its employé, under date of July 19, 1932, on application filed August 14, 1931, some six months or more after representatives of the defendant had inspected one of the plaintiff's machines with the new device in operation in the plant of a customer of the plaintiff in Baltimore.

The nature of the printer-slotter machines and the functions of the "running register" in connection therewith are aptly described in the brief of plaintiff's counsel as follows:

"A printer-slotter is a machine which prints and slots successively fed sheets of stiff corrugated board to convert said sheets into blanks for making shipping cartons or boxes. The machine is used by box makers whose business it is to make boxes of a wide variety of sizes and shapes and with a wide variety of printing to suit the needs of their customers who ship goods in the boxes. The variation in the size, character and printing is necessary because of the wide variety of goods which are shipped in such boxes.

"It is essential that the operating parts of the machine be adjustable so as to adapt the machine to operate on blanks of different widths and different lengths, and to cut in opposite edges of the blanks the necessary slots of different lengths, different spacings and at different distances apart across the sheet. The length of the slots defines the length of the flaps which are to be folded over and make the top and bottom of the box, the distance between the slots defines the width of the end flaps which correspond to the width of the sides of the box, and the distance between the slots measured across the sheet defines the height of the box.

"It is also necessary to print on the blanks a wide variety of subject matter including the name of the box user, the nature of the contents, the user's trade-mark, etc. The various printing plates must be capable of being applied in a wide variety of positions so that the printing will be properly proportioned on the sides and ends of the box formed by folding the finished blank.

"In two colors printing on separate successively fed stiff blanks, there are therefore four successive operating mechanisms which act upon the blank and which must be brought into registry.

"1. the reciprocating feed mechanism which advances the blank into the machine,

"2. a printing cylinder which applies one color to the blank in a predetermined position in respect to the advancing edge of the blank,

"3. a second printing cylinder for the second color which applies a second color to the blank in a predetermined position in respect to the first applied color, and

"4. the slotting heads which cut the slots in the front and rear edges of the blank and in predetermined positions in respect to such edges.

"The orders received by the box maker who is using the printer-slotter may be for widely varying amounts. One customer may wish only a few hundred boxes and another may order many thousands at a time. After the completion of each order it is necessary to replace the printing plates by different ones and almost always in some different position on the cylinder, and the knocker feed, the walls of the hopper, the scoring wheels and blades on the slotting heads and the slotting heads themselves must be adjusted to new positions in accordance with the desired characteristics of the next box to be made.

"The machines operate at comparatively high speed and may turn out as many as 200 blanks a minute. Running at this rate an order of 5,000 boxes would be completed in 25 minutes. A record run with one of Plaintiff's machines using the *running register* of the patents in suit was 55,000 blanks in 10 hours

with 16 changes in the character of the blank operated on (See Langston advertisement in 'Fibre Containers' for December, 1931, Defendant's Exhibit 15). The only time when the user of the printer-slotter is earning money from the use of his machine is when it is running. All of the socalled 'set-up' time in making adjustments between successive runs on different kinds of boxes is waste time and a financial loss to the user of the machine. Therefore the reduction in the shutdown time has from the beginning been a serious problem, and all manufacturers of printer-slotters have been continuously striving to so design their machines that the adjustments may be made in the minimum amount of time, and therefore with the minimum financial loss to the purchaser and user of the machine."

The plaintiff's device has successfully solved the problem, by making possible adjustments in the registry of the machine while it is running. The mechanical device, as formally described in Claim 1, of the "800" patent, is as follows:

"1. In combination, means for advancing a sheet of material, a printing cylinder for operating thereon, a driving gear, a helical gear secured to said printing cylinder, a second helical gear meshing with the first helical gear, means for transmitting power from said driving gear to said second helical gear for driving the first gears axially to thereby effect relative circumferential movement of said cylinder and said driving gear, and clutch connection for preventing or permitting relative rotation of said cylinder and said driving gear independent of any relative axial movement of said helical gears."

Claim 14 of the "802" patent reads as follows:

"A machine for operating on advancing sheet material, including a rotatable member for operating on said material, a pair of interengaging members coaxial with said rotatable member, one connected to said rotatable member, a drive for the other of said pair, a clutch for connecting or disconnecting said rotatable member from driving connection with said drive, means for moving one of said pair axially to effect the relative rotation of said interengaging members and to circumferentially adjust said rotatable member with respect to the drive without interrupting the transmission of power thereto, and means operable while the machine is running for effecting the axial adjustment of said rotatable member."

The plaintiff's patent application as first filed made claims in generic form sufficiently broad to cover three somewhat different mechanical methods of accomplishing the same practical result; (1) by the use of exteriorally interengaging helical gears, (2) by differential gears and (3) by coupling external and internal gearing. The Patent Office required divisions and finally allowed the "800" patent with some generic claims but only one specific form—the first above mentioned; and the second was allowed in patent "801" (not involved in this suit); and the third was allowed in patent "802". In reduction to commercial practice the plaintiff uses the first form specifically allowed in the "800" patent, and it is claimed that the defendant has infringed by using the specific form embraced in the "802" patent, and also has infringed the more general claims of the "800" patent.

■ It seems clear that the defendant's device is an infringement on the plaintiff's device under both the plaintiff's patents, including claims 1, 4, 8, 9, 17, 24, 25 and 26 of the "800" patent; and 1, 14, 19, 20 and 21 of the "802" patent. Defendant's expert, Mr. Brown, a highly qualified witness, admitted that practically all these claims of both patents of the plaintiff were directly and literally readable upon the defendant's construction, although he contended that there was not infringement in substance. He disputed that claim 1 of the "800" patent was literally readable on the defendant's device, but even if this is true, the doctrine of equivalents would seem to fairly apply. His admission of literal infringement is of itself not necessarily conclusive (see Edison v. American, etc., Co., 151 F. 767, 773 (C. C. A. 2); Geoghegan v. Ernst, 256 F. 670 (C. C. A. 2); Silver & Co. v. S. Sternau & Co., 258 F. 448 (C. C. A. 2); but when there is added the considerations that the defendant's running register device was designed to and does effectively produce the same results, on the same type of machine, by only a slightly different mechanical feature, and it is found that the defendant's activity in making its device was certainly stimulated by the plaintiff's trade announcement of the completion of its device and the defendant's was made after inspection of the operation of the plaintiff's and functions on the same general mechanical principle, the conclusion that there was infringement in substance as well as in language cannot be escaped.

■ That the defendant succeeded in obtaining a patent for its device does not raise any presumption of non-infringement. Frick

Co. v. Lindsay (C. C. A.) 27 F.(2d) 59; Skelton v. Baldwin Tool Works, 58 F.(2d) 221, 227 (C. C. A. 4); David v. Harris, 206 F. 902 (C. C. A. 2); Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 43, 50 S. Ct. 9, 74 L. Ed. 147. Infringement is not avoided by change in detail. Frick Co. v. Lindsay, 27 F.(2d) 59 (C. C. A. 4); Skelton v. Baldwin Tool Works (C. C. A.) 58 F.(2d) 221. The present case is, in my opinion, distinguishable on the facts from certain recent cases in this Circuit where no infringement was found. Chisholm-Ryder Co. v. Buck, 65 F.(2d) 735, 736; Demco, Inc. v. Doughnut Mach. Corp., 62 F.(2d) 23; Doughnut Mach. Corporation v. Joe-Lowe Corporation, 67 F.(2d) 135.

■ *Validity of the Plaintiff's Patents:* The emphasis of the defense is put on the proposition that both the plaintiff's patents are invalid in view of the prior art. Eleven prior patents were put in evidence by the defendant. Of these five were specially emphasized. They have been specifically referred to in the findings of fact. It is unnecessary to here repeat what is there stated. They are reviewed at considerable length in the testimony of the defendant's expert, Mr. Brown, evidently a highly qualified mechanical expert although having no practical familiarity with the printer-slotter machines prior to his retention in this case by the defendant. He was also, I think, a very candid witness. But an attentive hearing of his testimony given in connection with various exhibits produced or referred to by him, and a careful reading of his testimony as transcribed, (especially considering his cross-examination, and the whole of the testimony of Mr. Langston, also a highly competent and experienced mechanical expert on the particular subject matter, and though highly interested, also, I think, a credible witness) has not convinced me that the plaintiff's patents should be declared invalid by reason of the prior art. It is also to be noted that Mr. Brown admits the claims of the plaintiff's patents do not literally read upon any of the prior patents which he sets up as anticipations. The five prior patents which he emphasizes are taken, in my opinion, from what may be considered non-analogous arts. They relate to cigarette making machines, a web printing machine (evidently different from a printer-slotter) and ignition control for internal combustion engines. It is very generally held in patent decisions that patents in non-analogous arts are not available as anticipations. Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corp., 40 F.(2d) 910 (C. C. A. 4); Bisight Co. v. Onepiece Bifocal Lens Co., 259 F. 275 (C. C. A. 4); Berry v. Robertson, 40 F.(2d) 915 (D. C. Md.); Galvin Elec. Mfg. Co. v. Emerson Elec. Mfg. Co., 19 F.(2d) 885, 889 (C. C. A. 8); Otto Coking Co. v. Koppers Co., 258 F. 122, 130 (C. C. A. 3); Hookless Fastener Co. v. G. E. Prentice Mfg. Co., 68 F.(2d) 940 (C. C. A. 2).

■ The plaintiff's claim to its invention is not based on any new mechanical principle or means but what is claimed is a new combination of old elements for producing a new and useful result—in this case increasing the speed of operations of the machine and the amount of its daily output by saving wasted time consequent upon the necessary prior practice of shutting down the machine to make adjustments. The result so obtained has been recognized as a new result from a patent standpoint. General Elec. Co. v. Hill-Wright Elec. Co., 174 F. 996, 998 (C. C. A. 2); Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. A new combination of old parts is patentable if it produces a new result. Black & Decker Mfg. Co. v. Baltimore Truck Tire Serv. Corp., 40 F.(2d) 910 (C. C. A. 4); Frederick Iron & Steel Co. v. Sanford Riley Stoker Co., 287 F. 495, 499 (C. C. A. 4); Webster Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177; Langston Co. v. Mengel Co., 60 F.(2d) 151 (D. C. W. D. Ky.). More specifically we find that the application of old gearing and clutches in a new location in a machine to accomplish a new result has been held to be an invention. Samuel M. Langston Co. v. Mengel Co., 60 F.(2d) 151 (D. C. W. D. Ky.); Wisconsin-Minnesota, etc., Co. v. Hirschy Co., 28 F.(2d) 838 (C. C. A. 8); Cadillac Motor Car Co. v. Austin, 225 F. 983 (C. C. A. 6); Carlton, etc., Co. v. Niles, etc., Co., 27 F.(2d) 931 (C. C. A. 6).

■ In a number of cases it has been held that the prior art to anticipate an invention must be clear and definite and particularly so where the prior patents relied on are foreign patents and when they have not been reduced to commercial practice. Standard Brands v. Federal Yeast Corporation, 38 F.(2d) 329, 337 (D. C. Md.); Fleischmann Yeast Co. v. Federal Yeast Corporation, 8 F.(2d) 186 (D. C. Md.), affirmed (C. C. A.) 13 F.(2d) 570; J. A. Mohr & Son v. Alliance Securities Co., 14 F.(2d) 799 (C. C. A. 9). The prior art patents in this case do not sufficiently meet this test.

■ There are additional considerations in this case which I think affirmatively tend to support the plaintiff's patents. In the first place the file wrappers of both patents show that they were respectively given careful and critical consideration in the Patent Office and the presumption of the validity of their issuance is thereby to that extent strengthened. A number of the prior patents now relied on by the defendant were cited by the Patent Office in the course of its examination. Gulf Smokeless Coal Co. v. Sutton, Steele & Steele (C. C. A.) 35 F.(2d) 433, 437.

The defendant contends that the Patent Office examination was not exhaustive because the Examiner did not find or cite in either application a patent showing a circumferential running adjusting mechanism in association with a disconnecting means, and it is argued that if the prior patents now set up by the defendant and particularly the five mentioned had been found by the Examiner, the plaintiff's patents would not have been issued. But for the reasons already stated I do not think these prior patents control the finding of validity. No doubt each of the mechanical elements employed in the plaintiff's device and covered by its patents can be found in some prior patent but the patentability of the plaintiff's device consists in the combination of the several mechanical elements and their application to existing printer-slotter machines. The latter is itself obviously a highly complicated piece of machinery and the application of the combination of old elements thereto to achieve the further new result attained by the running register is an added and new function of the machine which is not only commercially highly valuable but involves real inventive skill and is not merely a ready adaptation of such mechanical skill as would ordinarily be presumed on the part of a competent mechanic. The evidence in this case is persuasive of that conclusion when we find that it took the defendant's employé six months or more after an inspection of the operation of the plaintiff's developed "running register" to devise a similar device with a slightly different mechanical adjustment. Nor is the defendant's position in now asserting the invalidity of the plaintiff's invention consistent with its own securing of a patent on its device. And to these considerations may be added the further one that the plaintiff's device has proved commercially successful and was promptly imitated by the defendant whose own advertisement asserted the great utility of its "run-

ning register" and gave notice of its patent application therefor.

■ I conclude, therefore, that the claims of the plaintiff's patents which are relied on in this case are valid and that they have been infringed by the defendant's "running register" and the plaintiff is, therefore, entitled to an injunction and an accounting in the usual form. Counsel may submit the appropriate decree for signature.