### TIPP FIREWORKS CO. et al. v. VICTORY SPARKLER & SPECIALTY CO.
#### No. 4947.

Circuit Court of Appeals, Third Circuit.
Sept. 19, 1933.

C. C. Keedy, of Wilmington, Del., and H. A. Toulmin, Jr., and H. A. Toulmin, Sr., both of Washington, D. C., for appellants.

John Pearce Cann, of Wilmington, Del., and Charles S. Grindle, of Washington, D. C., for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This suit is brought by the Tipp Fireworks Company, as exclusive licensee, and Henry B. Faber and Louis L. Driggs, Jr., the owners of the patent, against the Victory Sparkler & Specialty Company for infringement of letters patent No. 1,785,770, for an aerial toy in the field of pyrotechnics. Claims 1, 2, 3, and 8 of the patent are in issue. The District Judge dismissed the bill of complaint after full consideration, on the ground that the defendant does not infringe claims 1, 3, and 8, and that claim 2 is invalid. The plaintiffs appealed.

The plaintiffs' toy is an ingenious combination of the familiar mortar with a propelling charge of explosive, and a projectile with an expelling charge, which is designed to explode after the discharge of the projectile from the mortar and while it is in flight, and to expel a toy parachute to which a metal figure is attached. The toy when assembled is a unit, designed for greater safety than was apparently achieved in pyrotechnics before.

Claim 2 provides: "2. In a device of the class described, a base, a cylindrical tube rising from said base, an explosive chamber at the bottom of said tube and on said base, a fuse running to the explosive chamber, an explosive in the chamber, a projectile closing the upper end of the chamber, said projectile having a cylindrical wall secured to its base, a time fuse in said base and passing above the same, an expelling charge chamber, above the disc, an expelling charge in the expelling charge chamber, a check at the top of the expelling charge chamber and means for carrying a parachute above the check."

The device described presents exteriorly a small cylinder attached at one end to a base. A fuse enters the wall of the cylinder just above the point where the latter meets the base. A cross-section of the toy, from bottom to top, shows its construction. Above the base, and in the lower portion of the cylinder, there is an explosive chamber that contains a lifting charge of loose powder into which the main fuse runs from the outside. The top of the chamber is closed by a disc that forms the base of a projectile, or a shell. The projectile is a cylinder that fits snugly against the walls of the mortar so as to close and seal the tube. In the disc that forms the base of the projectile, there is a time fuse. The burning powder in the explosive chamber ignites the time fuse as the projectile leaves the mortar, and, at the proper time, during the flight of the projectile, it sets off an expelling charge that is carried in the bottom of the projectile. The expelling charge is held in place by a disc called the thrust and gas check cap. This check transmits the force of the explosion of the expelling charge to the thrust member which the check supports and at the same time retains the gases in the chamber of the projectile. The thrust member is the circular base of a metal weight fashioned in the figure of a man. Attached to the extended arms of this figure, by cords, is a small paper parachute which is wrapped about the figure of the man. The top of the projectile is sealed by a disc.

So it appears that the plaintiffs have developed in a unit a toy whose function depends upon closely interrelated acts from the time the main fuse is ignited until the parachute is expelled from the projectile and opens to settle earthward. The action is begun by firing the main fuse. This causes an explosion in the chamber of the mortar to ignite the time fuse in the base of the projectile, and to expel the projectile. The disc, forming the base of the projectile, acts to conserve the gases in the explosive chamber and insures an efficient thrust for the projectile. When the projectile has reached the proper altitude, the time fuse ignites the expelling charge in the powder chamber of the projectile. This second explosion thrusts upward with an even force against the check, on which the weighted figure is supported, and the check transmits the force of the thrust to the base of the figure around which the paper parachute is wrapped. The check preserves the gases of the expelling charge, as well as transmitting the thrust; so that the figure is expelled vertically, and through the sealed disc at the top of the cylinder, without injuring the fragile parachute. The mortar, or tube, in which the projectile is packed, can only be used for the one loading.

The District Court held that claim 2 was invalid; that its features constituted "not

a patentable combination, but an aggregation of elements." Elevator Supplies Company v. Graham & Norton Company, 44 F.(2d) 358 (C. C. A. 3). But the plaintiffs contend that not only does claim 2 contain new elements involving invention, but that it complies with the requirements of patentability in that the combination produces a new and useful result, and not merely the sum of that produced by its several parts. National Cash-Register Company v. American Cash Register Company, 53 F. 367 (C. C. A. 3).

To establish its contention that claim 2 is anticipated by the prior art, the defendant has referred to certain patents which may be classified as the mortar, ordnance, rocket, and spring toy groups. In these several groups, the defendant believes that it finds either the equivalent and complete anticipation of claim 2, or, at least, that the elements which are brought together in claim 2 result in a mere aggregation of old features.

The defendant relies upon the following device and patents to establish anticipation and invalidity of the plaintiffs' patent here in suit:

The Japanese daylight shell, and the Hirayama, No. 282,891. These, doubtless, are more like the plaintiffs' device than the other examples of the art. The Hirayama patent appears incomplete and fails to disclose its exact functions, but they are no more like those of the plaintiffs' device than those of the Japanese daylight shell. The latter is apparently a dismounted rocket, which is fired from a mortar upward and out of the mouth, or top, of the mortar, by means of igniting a fuse extending from a lifting charge of loose powder in a paper cone, fastened to the projectile. The projectile must be placed in a mortar which can be used as often as it is reloaded in this manner. The projectile fits loosely in the mortar to allow clearance for the fuse and for its expulsion. From the cone to the expelling charge a time fuse extends, and above the expelling charge is a small metal weight about which is tightly compressed a toy parachute. The daylight shell is not a unit comprising the coaction of the mortar and projectile. It is dangerous, inefficient, and crude.

The Bergman patents, Nos. 1,318,719 and 1,318,720. These relate to illuminating shells used for military purposes. The shell contains a lifting charge, a time fuse, which ignites an expelling charge, and a relatively large can of illuminating material which compresses a parachute designed to carry the can after the thrust against the top of the shell.

The Spring Toy Device patents. This group is represented by Petersen, No. 1,515,-314; Upham, No. 1,096,577; Schneider, No. 679,996. These patents are operated by springs and do not involve explosives, the mortar, or coaction of elements as does the patent in suit.

The Pain patents, No. 617,539, No. 624,-530, No. 1,299,217; and British Patent, No. 7367 of 1915. These are for signal rockets and do not contain the mechanism involved in the plaintiffs' patent.

It is obvious that some of the elements disclosed in these prior art patents are also found in the plaintiffs' device, but no one prior to the plaintiffs brought these elements into a combination and unitary control. The question here is whether or not these elements, whether new or old in their unitary construction, co-operate to effect a result that is "something more than the sum of that produced by the separate parts"; a combination and not a mere aggregation. Julius Levine & Co. v. Automatic Paper Machinery Co., Inc., 63 F.(2d) 547 (C. C. A. 3); National Cash-Register Company v. American Cash Register Company, supra.

It is our judgment that claim 2 is valid. The several elements of the device are a combination and interdependent, coacting from the time the fuse is ignited until the lifting charge explodes. The lifting charge, loose in the base of the mortar tube, is modified by the projectile, which serves to retain the gases from the charge to permit an efficient thrust to be transmitted by the base of the projectile; the time fuse in the base of the projectile is ignited by the explosion of the lifting charge; the expelling charge likewise is retained by the gas checks on which the thrust member, that is, the figure with the parachute attached, is supported until a uniform force can be transmitted by the thrust and gas check to the thrust member, thus expelling the figure around which the parachute is carried without injury to the paper. The correlation of the elements of the toy is more than a mere aggregation of parts, for each part modifies another, and the objects of the patent cannot be attained without the co-operative actions.

Invention lies in the results of the unitary action of the combined elements. The combination is new and useful. The hazards of dropping projectiles into an open tube mortar are eliminated; there is no longer the attending danger of igniting premature fuses at the top of the mortar, or of self-combustion

958

as the result of sparks in the bottom of the mortar. The plaintiffs' toy can be used once only, but with assured success, because of the co-ordinated effect of explosion of the two thrusting charges and the transmission of the expelling charge to the thrust member without compressing the paper parachute which is arranged about the metal figure in a new manner.

The record shows that the defendant admitted that it infringes claim 2 if it is valid. As above stated, we think it is valid and that the defendant's aerial mortar is equivalent to the plaintiffs' device, and so infringes claim 2.

The plaintiffs also contend that the defendant infringes claims 1, 3, and 8 of the patent in suit. These claims are substantially the same as claim 2, except that they contain an additional functional element, which the defendant insists has no mechanical equivalent in his device. This element is called an annular collar. It is a small metal circle open at both ends, and is placed in the mortar tube between the bottom of the projectile and the thrust and gas check cap. Thus it forms a receptacle for the powder comprising the expelling charge of the projectile.

While this collar makes the toy more mechanically efficient, its real object is to act as a thrust member (and the specification so states) in order to protect the plaintiffs' time fuse located in the base of the projectile. This fuse is a metal capsule extending upward into the projectile and contains fuse powder. It was found that this collar was helpful in preventing the type of fuse that the plaintiffs use from being crowded and injured. The trial judge held that there is nothing in the defendant's device equivalent to the annular collar, and that, lacking an element of the combination, the defendant does not infringe claims 1, 3, and 8.

We agree with the decision of the lower court as to claims 1, 3, and 8, for the side walls of the defendant's projectile are not the equivalent of the collar. The defendant uses a string fuse, and, unlike the plaintiffs' capsular fuse, it needs no protection.

It does not appear to be necessary for us to discuss the question of unfair competition which the plaintiffs injected into the case; for it was not passed upon by the learned District Judge.

Accordingly, the decree of the District Court is affirmed as to claims 1, 3, and 8, and reversed as to claim 2, with the direction to reinstate the bill of complaint and proceed in conformity with this opinion.