### COMMERCIAL NOVELTY CO., Inc., v. VICTORY FIREWORKS & SPECIALTY CO. et al.

#### No. 4180.

Circuit Court of Appeals, Fourth Circuit.

Sept. 28, 1937.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

Basel H. Brune, of Chicago, Ill. (Joshua R. H. Potts, and Eugene Vincent Clarke, both of Chicago, Ill., and William H. Hudgins, of Baltimore, Md., on the brief), for appellant and cross-appellee.

Nathan Heard, of Boston, Mass. (Frederick A. Tennant, of Boston, Mass., and William Pepper Constable, of Baltimore, Md., on the brief), for appellees and cross-appellants.

PARKER, Circuit Judge.

This is an appeal and cross-appeal from a decree in a suit for infringement of patent No. 1,467,755, which the court below held valid and infringed by the globular toy torpedoes of defendant's manufacture, but not by its "salutes." The facts are fully stated in the lower court's opinion, which is reported in (D.C.) 16 F.Supp. 969, 974; and all of the questions presented to this court are there fully considered. As the majority of the court, after careful consideration of the record and briefs and arguments of counsel, are in thorough accord with the reasoning as well as with the conclusions of the District Judge, nothing need be added to what is there said.

The only serious question in the case is whether there was patentable novelty in the torpedo and the process of making it covered by the patent in suit, in view of the disclosure of the Graber patent, No. 902,650. We think that there was. As was well said by the judge below: "It is true that most of the features of his improvement in toy torpedoes, in one form or another, have heretofore been known and used separately. Thus there is nothing new in the form or contents of the inner cartridge; nor in an encasing device to protect it; nor in the spheroidal form of the latter; nor in the use of a fibrous material such as wood-pulp or sawdust for a casing; nor in the mere process of rolling or tumbling to increase size or bulk. Cimorosi has, however, combined several prior ideas or devices to create a new and, for the limited purpose mentioned, useful result in the making of much more efficient toy torpedoes. See Parks v. Booth, 102 U.S. 96, 102, 26 L.Ed. 54; Black & Decker Mfg. Co. v. Baltimore Truck Tire Service Corporation, 40 F.(2d) 910 (C.C.A.4th); Langston Co. v. Hooper Co., 8 F.Supp. 613, 616 (D.C.Md.), affirmed 79 F.(2d) 992 (C.C.A.). It was something more than the 'exercise of the skill of the calling or an advance plainly indicated by the prior art.' Altoona Theatres v. Tri-Ergon Corporation, 294 U.S. 477, 486, 55 S.Ct. 455, 458, 79 L.Ed. 1005; Diamond Rubber Co. v. Consolidated Rubber Co., 220 U.S. 428, 443, 31 S.Ct. 444, 55 L.Ed. 527; Electric Cable Co. v. Edison Co., 292 U.S. 69, 79, 54 S.Ct. 586, 589, 78 L.Ed. 1131. Furthermore there is a really new feature in the Cimorosi process which consists in the combined agglutination and agglomeration of the granules of sawdust formed by the process of tumbling whereby they are both agglutinated to the cartridge and to each other to form the casing in spheroidal form. And this combination of the new and old creates a new utility for this class of articles in the combined advantages of (1) safety against accidental ignition in transportation or handling; (2) protection from deterioration by absorption of moisture; (3) certainty of detonation upon intentional percussion due to the spheroidal form which insures explosion no matter what the point of contact between the torpedo and the resisting object; and (4) intensity of explosion due to the substantially non-resilient characteristic of the shell of agglomerated and agglutinated material which is 'sufficiently tenacious to produce a pressure over a sufficient area of the fulminating material to give substantially instantaneous explosion' and therefore a louder noise."

To these considerations should be added the presumptions of patentability arising from the grant of the patent, from commercial success, and from the copying of the process and product of the patent by the defendant. In view of all of these, we are of opinion that the patent should be sustained and that the decree appealed from should be affirmed.

Affirmed.

SOPER, Circuit Judge (dissenting).

The undisputed fact is that Cimorosi adopted as a covering or shell for toy torpedoes the same sort of material which Graber had used upon somewhat similar fireworks, and had disclosed in his patent in 1908, more than twelve years before the application for the patent in suit. Both devices were known to the trade as torpedoes, although Graber's were usually called "crazy crackers." The covering in each case was essentially the same, consisting of an agglomeration of granular material, such as sawdust, agglutinated together. Graber designed the shell chiefly as a safety coating, so as to free the explosive from accidental ignition from friction in handling or in transportation; but his crazy crackers were capable of being exploded by a percussion like a torpedo, and of course the covering also protected them

from moisture. Cimorosi merely used a thicker coating of the same sort of material upon toy torpedoes fired only by percussion, and thereby produced an article safeguarded from accidental explosion and from moisture, and capable of producing an instantaneous and loud noise. At the best, his contribution hardly amounts to a patentable invention, but seems to be only a commercial development easily within the capacity of one skilled in the art and familiar with the Graber disclosure. In considering such a problem, we are not governed by the claims of the earlier patent but by its disclosures; and when we consider the latter in the pending case it seems a strained conclusion to deny to the original inventor the right to use his safety covering upon fireworks of the same general character without paying tribute to one who came much later into the field. Such would be the effect of the decree of the District Court. See Victor Cooler Door Co. v. Jamison Cold Storage Door Co. (C.C.A.) 44 F.(2d) 288.