**KILGORE MFG. CO. et al. v. TRIUMPH EXPLOSIVES, Inc., et al.**

Civ. A. No. 502.

District Court, D. Maryland.

Feb. 6, 1941.

Supplemental Opinion March 19, 1941.

Joseph T. Brennan, Brown & Brune, and Charles Ruzicka, all of Baltimore, Md., and Toulmin & Toulmin, of Dayton, Ohio, for plaintiffs.

Harold F. Watson and Watson, Cole, Grindle & Watson, all of Washington, D. C., and Raphael Walter, of Baltimore, Md., for defendants.

CHESNUT, District Judge.

In this patent infringement case, I have separately filed findings of fact and conclusions of law. This opinion will therefore be limited to comments on the most essential features of the case.

The three patents in suit relate to a special kind of pistol and fixed ammunition therefor to fire signal lights or flares, especially for use by combat and other aviators. A brief history of the development of the art will afford a helpful background for the understanding of the patents.

The need for signal lights and flares adapted for the use of aviators was clearly demonstrated in the World War of 1914–18, but the instruments and devices then used were rather crude and unsatisfactory. From time to time after 1918 various ideas were advanced in foreign and domestic patents and publications bearing upon the general subject of improvement of such devices; but nothing in the way of a substantial improvement was perfected until the advent of the plaintiff's patents in suit in this case, in 1928. Prior thereto the commonly used devices consisted of the Very pistol which was a breech-loading mechanism to fire a signal flare requiring the use of two hands; and also there was in more limited use a form of device affixed to the fuselage or some part of the body of an airplane which could be fired by hand. In April, 1928 the Ordnance Division of the United States War Department prescribed the general nature of desired improvements in such signal devices. What they wished to have was (1) a pistol or similar device which could be wholly operated by the aviator's using his right hand alone, leaving the left hand free to steer the plane; and (2) a device from which the flare or signal could be fired in any direction, up or down or sideways; and (3) ammunition which, if the firearm misfired when held overboard from the plane by the aviator, could nevertheless be released, without bringing the pistol back into the body of the plane for unloading, with possible fire hazard therefrom.

The patentees in this case, who had had previous long experience with military pyrotechnics, devoted themselves to the study of the problem for the production of a pistol and ammunition which would meet the several problems later set up by the requirements of the War Department. The result was that they produced within a year or so a pistol and fixed ammunition therefor which, upon test by the War Department, fully met its requirements, and shortly was adopted by the Department as "limited standard equipment". On March 20, 1928 the patentees simultaneously filed two patent applications, one for the device of the pistol, the other for the fixed ammunition, which were treated as co-pending patent applications and were finally granted on the same day, May 7, 1928, Nos. 1,712,382 and 1,712,383. The patentees continued to work upon refinements and improvements of the device with the result that they filed subsequent patent applications one of which constitutes the third patent in this case granted February 20, 1934, No. 1,947,834. Somewhat later the patentees and the War Department entered into an agreement whereby in time of emergency (now existing) the War Department was permitted by the patentees to have the devices manufactured, not only by the patentees or their licensees, but by others selected by the War Department, upon the payment of a moderate, reasonable royalty. Since 1928 the pistols and ammunition patented have been widely used, and the gross receipts from sales therefrom have exceeded a million dollars; and since 1928 there has been no new and better device produced.

In 1937 the plaintiff in this case, the licensees of the patentees, sold a substantial amount of the patented production to the Glenn L. Martin Co., of Maryland, manufacturers of airplanes. In 1939 Glenn L. Martin Co. wished to obtain an even larger number of the same devices for re-sale to the Turkish government; but this time Glenn L. Martin Co. invited competitive bids from the plaintiff and from the defendant, Triumph Explosives, Inc., a Maryland corporation, with plant at Elkton, Maryland. This latter corporation had previously unsuccessfully endeavored to sell devices of the same general nature to the War Department as an alternate on bids. For the new order for the Glenn L. Martin Co. the defendant much underbid the plaintiff, and obtained and filled the order and was paid for it. The total consideration for the new order, which however included in larger part articles not covered by the patent, was about $70,-000. The defendant guaranteed Glenn L. Martin Co. against damages for infringement. The defendant also agreed to furnish Glenn L. Martin Co. with a certificate that the articles furnished on the order would operate satisfactorily in accordance with the United States War Department requirements for similar devices. This patent infringement suit has resulted from the action of the defendants in filling

this new order. The vice-president of the defendant company testified that its agents had for some years prior to 1939 been working on the problem of developing a device of its own of this general nature but had not succeeded in making any sales of its product before the order from the Glenn L. Martin Co. and have not made or sold any such articles since then, having no orders therefor.

■ If the patents are valid, it is my opinion that the defendant's devices sold to the Glenn L. Martin Co. were clearly infringements of the first and second patents. A mere superficial inspection of the competing products indicates at once their substantial similarity. It is true that on close inspection some differences in detail of construction appear, but there is no substantial functional difference, and the differences appear to be at least substantial equivalents as determined by the patent law. The more important and possibly more difficult question is whether the plaintiff's patents are valid, in view of the prior art and alleged anticipatory foreign and domestic patents. From the arguments of counsel and the study of the prior art as revealed in patents and publications, I think it may be assumed that the plaintiff's patents do not contain any one essentially new and novel element or principle of mechanics, and the basis of patentability is therefore a combination of old elements which it is claimed have achieved a new and useful or at least a greatly improved result.

The patented device may be described in simple, nontechnical patent language, in the following way. It comprises a large heavy metal pistol, with more or less conventional or usual features of trigger and spring actuated hammer for firing, with a very short large calibre smooth bore barrel, into which is loaded from the muzzle a much longer aluminum metal cylinder, forming in effect an elongated or auxiliary barrel. The cylinder fits closely but slidably into the barrel of the pistol, and is held therein by a spring latch device which fits into an annular groove at the base of the cylinder which acts automatically in fastening and holding the cylinder in the pistol; but which may be released by the pressure of the thumb of the right hand after the pistol is fired, when it is desired to drop out the cylinder or to unload the pistol. The metal cylinder, which is called the cartridge case, is closed at both ends, but contains in the base an inserted blank cartridge to be exploded by the force of the pistol hammer when the trigger is pulled. The metal cartridge case contains another aluminum metal cylinder concentric with the outer cylinder or cartridge case, which is known as the projectile case; the latter, in turn, contains a candle or flare attached to a folded parachute. When the pistol is fired, the blank cartridge at the base of the outer cylinder explodes the powder and the force of the explosion shoots the projectile case from the cartridge case, the latter remaining fixed in the barrel of the pistol. When the powder in the blank cartridge at the base of the cartridge case expels the projectile case, it also fires a delayed action fuse inserted in the base of the projectile case, and after the projectile has been shot into the air, this fuse ignites a powder charge in the projectile case, which in turn shoots or projects the contents of the projectile case—that is, the candle or flare and the parachute—into the air. Then the parachute gradually opens and suspends the burning candle which has been ignited in the action. The cartridge case, containing the projectile case and its contents, is called "fixed ammunition" because it is a single unit loaded into the pistol at one time, and is thus distinguished from earlier forms of loading a firearm, such as a gun or cannon, where the powder is first placed in the muzzle and the shot or ball is separately rammed home on top of the powder.

In practical operation, the metal cylinders constituting the fixed ammunition are placed in a rack in the cockpit of the plane, in convenient reach of the right hand of the aviator, with the bases up. The pistol is also placed accessible to his right hand. The aviator then grasps the butt of the pistol with his right hand and places the open barrel over the base of the cartridge case and presses it down until the cartridge case becomes automatically fixed and held by the operation of the spring latch. The aviator then holds the pistol outside of the cockpit and fires it with his right hand in any direction desired. If the discharge is effective the aviator then with the thumb of his right hand can readily release the spring catch dropping the cartridge case which falls free of the plane or can bring it back into the plane and there release it from the pistol grip. But if by a mischance the firing is not effective to shoot the projectile case out of the cartridge case, and the aviator fears a possible later backfire or explosion if he

should bring the pistol and fixed ammunition back into the cockpit, he can, without doing so, release the spring latch and drop the cylinder case with all its contents directly from the plane, thus avoiding the possibility of a later accidental fire from the pistol with the ammunition. It will be seen that the device in operation meets all the prescribed requirements of the War Department.

When the suit was originally filed the plaintiffs relied upon seven separate patents, but four of these have now been eliminated, and the claims as to infringement are limited to the remaining three. As these have been specifically referred to in the findings of fact and conclusions of law separately filed, it is unnecessary here to repeat the details of the specifications and claims. Of course the validity of the patents must in final analysis stand or fall upon the wording of the respective claims. In the findings, the literal wording of the claims relied upon has not been copied, but I have adopted the analyses thereof as succinctly, and I think correctly, phrased by counsel for the plaintiffs. I shall not undertake in this opinion to review them in detail or to describe meticulously the several elements of the respective claims. It is not possible without the aid of portraiture or models to describe with precise accuracy in words only the details of the structures of the plaintiff's and defendant's devices; and the formal technical language of the claims themselves are not very revealing; but they are readily understood when the models are seen and explained by counsel; and for this purpose it is necessary to cut away a portion of the outside cases of both cylinders in order to understand their composition and arrangement of contents and firing devices. I shall therefore limit the further discussion of the validity of the patents and the infringement thereof to the more general objections that have been made by the defendants.

The principal contention is that all three patents are invalid for want of novelty, in view of the prior art and alleged full anticipation by particular foreign and domestic patents. I have concluded that this broad defense is not sound. The first and second patents to Driggs and Faber, Nos. 1,712,382 and 1,712,383, were filed and considered and are to be treated as co-pending patents, both being granted the same day, May 7, 1928, on applications filed March 20, 1928. The law of co-pending patents has been considered and stated in this circuit in Montgomery Ward & Co. v. Gibbs, 27 F.2d 466; Theroz Co. v. United States Industrial Chemical Co., D.C., 14 F.2d 629, 639, affirmed 4 Cir., 25 F.2d 387. They may be read together as a single patent in order to construe the claims of one of them. C. & A. Potts & Co. v. Creager, 155 U.S. 597, 605, 15 S.Ct. 194, 39 L.Ed. 275; Pyle Nat Co. v. Lewin, 7 Cir., 92 F.2d 628; Hartford-Empire Co. v. Obear-Nester Glass Co., 8 Cir., 71 F.2d 539. The first of these co-pending patents covers the pistol (which is designed for use with the special type of fixed ammunition); and the second covers the fixed ammunition itself. The third patent to Driggs and Faber, No. 1,947,834, which was issued February 20, 1934, covers particularly for this case an improvement in the construction of the inner cylinder whereby, in combination with other elements, the projectile case has a relatively heavy smooth base and thin side walls, both made from one piece of drawn or "extruded" aluminum. The purpose is to insure greater efficiency in firing the signals and flares by better resisting the force of the recoil from the discharge and protection of the contents from moisture and other sources of deterioration.

Claim 1 of the first patent (No. 1,712,382) which is here relied on by the plaintiff, reads as follows: "(1) A muzzle-loading low pressure fire arm adapted to be used with fixed ammunition provided with a cartridge case, comprising a pistol grip, a short smooth bore barrel, spring actuated firing mechanism with a trigger for releasing same, automatic means for holding the cartridge case in said barrel before and after firing, with means for releasing same from said barrel when desired."

The language of the claim should of course be interpreted in the light of the specifications which in this case are helpful; and it should also be particularly noted that on September 23, 1931 the patentees entered a disclaimer restricting Claim 1 which reads as follows: "By restricting the element 'cartridge casing' of said Claim 1 to 'closed at its rear end and capable of standing the strains of firing and ejecting completely a projectile therefrom without deformation of the "cartridge casing"'."

The defendant's counsel contends that the disclaimer is invalid because in reality it is an addition to rather than a limitation or restriction of the claim; but I do not so

construe it. See Altoona Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 490, 55 S.Ct. 455, 79 L.Ed. 1005.

The sharpest attack made upon the validity of the claim is that it has been completely anticipated by the French patent to Vaxelaire, No. 594,962 (1924), referred to in the findings of fact. I think it is true that this French patent does disclose the idea of a spring device for holding a cartridge in the barrel of a pistol and releasing it, with one hand; but it does not show a complete apparatus for useful performance, and it does not clearly anticipate the whole combination claimed in this patent when read in the light of the specifications and particularly when effect is given to the disclaimer. With respect to the latter it is also said by defendant's counsel that the French patent to Rollet (1918), No. 496,832, disclosed the idea of a non-expanding cartridge shell within the barrel of the pistol, but the fullness of the disclosure may well be questioned and the purpose was evidently different. With respect to the effect of foreign patents generally, it is well to bear in mind what was well said thereof by Judge Soper in the case of Standard Brands v. Federal Yeast Corp., D.C., 38 F.2d 329, 337: "Inventions cannot be invalidated by the mere introduction of prior publications unless the description is so full, clear, and exact as to enable any person skilled in the art to make and practice the invention, and the rule is enforced with particular strictness when the disclosures are found in foreign patents or publications. Permutit Co. v. Harvey Laundry Co. [2 Cir.], 279 F. 713, 718, 720; Loew Filter Co. v. German-American Filter Co. [2 Cir.], 164 F. 855, 860. Selectasine Patents Co. v. Prest-O-Graph Co., D.C., 267 F. 840, 842; Bone v. [Com'rs of] Marion County, 251 U.S. 134, 40 S.Ct. 96, 64 L.Ed. 188; and cases cited in [Fleischman Yeast Co. v. Federal Yeast Corp., D.C.,] 8 F.2d 186, 197."

Of course the claim is good only as a combination of old elements which produces a new or improved result. There is certainly nothing new in the separate features of a muzzle-loading pistol, or the usual mechanism therefor as described in the claim, and it can be said that in view of Vaxelaire the idea of holding the cartridge in the barrel by a spring catch which could be loaded and released with one hand was not new; but the whole combination as developed by the patentees achieved a satisfactory result which was theretofore lacking and which has not subsequently been improved upon. The features of the combination that may properly be stressed in this connection are (1) the use of the cartridge case as an *auxiliary barrel*, (2) without deformation of its structure, in combination with (3) the spring latch means for ejecting it when desired, (4) all arranged in such form that it can be efficiently operated throughout with the use of only one hand. It is significant that apparently no one thought of combining these several features in one device before the patentees did so in 1928.

In the second patent, No. 1,712,383, Claims 1 and 7 are relied upon. Claim 7 reads as follows: "Fixed ammunition for use with low power smooth bore firearms, having a short barrel of large calibre, said ammunition comprising a cartridge case forming an auxiliary barrel for the small arm and provided with a rearwardly projecting portion adapted to slide freely in the gun barrel with a propelling charge in the rear end of the cartridge case, and having a chamber for the expansion of the gases from the propelling charge, and said cartridge case having a loading chamber in front of said expansion chamber, with a projectile mounted in said loading chamber, and adapted to be ejected therefrom by the gases from the propelling charge, said projectile comprising a tube slidably mounted in the loading chamber of the cartridge case, a parachute and flare mounted in said tube, an expelling charge also mounted in said tube for ejecting said parachute and flare and for igniting said flare, and means, controlled by the firing of the small arm, for igniting said expelling charge."

Here again the language of the claim is best understood when read in connection with a visual examination of the plaintiff's device and the defendant's imitation thereof. The feature of the cartridge case forming an auxiliary barrel for the special type of pistol, in connection with the particular interior arrangement of both cylinders and the progressive action of the several explosions, constitute the patentable combination although the several elements, separately considered, are old in the art. No claim is made for the contents of the projectile case as such, that is, the parachute and the candle or flare, or for the mere process of shooting them out of the projectile case. Similar devices for that purpose are disclosed in the British patents to Wilder (1918) No. 128,976, and to Pain

(1915) No. 7363, and are not uncommon in the art of fireworks. And the same patentees devised and patented a somewhat similar arrangement for toy fireworks in 1930 (U.S. No. 1,785,770), Claim 2 of which was held valid and infringed by the Third Circuit in Tipp Fireworks Co. v. Victory Sparkler and Specialty Co., 66 F.2d 955. Viewing the former art as a whole, it can be said that it was not sufficient to enable a competent and skilled workman in the art to devise and construct the plaintiff's apparatus. The fact that there was such a strong need for a satisfactory device of this character over a long period of years, which was met only by the patentees in this case, themselves men of superior ability and experience in ordnance requirements, is convincing evidence that it required much more than mere mechanical skill to do what the patentees have successfully accomplished.

With respect to invention in patent law, the test of patentability or invalidity is frequently said to be that of combination or mere aggregation. In the former the several elements co-act one with and on another, to produce a unitary result, while in the latter they act separately and independently, except to the extent that they are parts of a unit. In the field of sports it has been said, by analogy, the difference is that between a football team and a track team. Skinner Bros. Belting Co. v. Oil Well Imp. Co., 10 Cir., 54 F.2d 896. But this is not always the acid test, because, given an undoubted true combination, the ultimate question often still remains, whether the combination really shows invention. Sachs v. Hartford Elec. Supply Co., 2 Cir., 47 F.2d 743. And as to this, objective tests are helpful but not always conclusive. The final decision must be an act of judgment, as in the determination of what constitutes negligence or the exercise of due care in a given state of facts. "An invention is a new display of ingenuity beyond the compass of the routineer, and in the end that is all that can be said about it." Kirsch Mfg. Co. v. Gould Mersereau Co., Inc., 2 Cir., 6 F.2d 793, 794.

In this case the several elements of each of the patents clearly form a true combination in that they interact one upon and with another to accomplish a particular purpose. Does the concrete embodiment of the patentees' ideas display invention? Looking at the prior art, the lack of satisfactory instruments before

1928, and the meeting of the requirements of the practical men in aviation by the patentees' product, I reach the conclusion that the new combination of old elements in this case rises to the dignity of invention. If it be assumed that the matter is really doubtful, we are aided by the presumption of validity from the grants of the Patent Office, by the prompt and decided commercial success, and by the tribute to efficiency implied from the defendant's substantial imitation. If the scales of judgment were otherwise evenly balanced, these considerations definitely tip them in favor of invention. I think this conclusion is justified on the principles that have been applied in this circuit in distinguishing between good patentable combinations and mere aggregations. Hoeltke v. Kemp Manufacturing Co., 4 Cir., 80 F.2d 912; Commercial Novelty Co. v. Victory Fireworks & Specialty Co., 4 Cir., 92 F.2d 299; Langston Co. v. Hooper Co., D.C., 8 F.Supp. 613; Id., 4 Cir., 79 F.2d 992; Jamison Cold Storage Door Co. v. Victor Cooler, etc., Co., 4 Cir., 44 F.2d 288; Black & Decker Mfg. Co. v. Baltimore Truck, etc., Corp., 4 Cir., 40 F.2d 910. See also Parks v. Booth, 102 U.S. 96, 26 L.Ed. 54; cf. Lincoln Co. v. Stewart-Warner Corp., 303 U.S. 545, 549, 58 S.Ct. 662, 82 L.Ed. 1008. Many other cases are conveniently reviewed in "Patentability and Validity" by Rivise & Caesar, sections 127 and following. I reach the conclusion despite the fact that the Patent Office examiner did not cite against the application some of the patents now relied on by the defendant to show the prior art. This merely weakens in degree the force of the presumption of validity by the grant, but is not sufficient in this case to change the result. See Gillette Safety Razor Co. v. Cliff Weil Cigar Co., 4 Cir., 107 F.2d 105, 107.

I have considered the several contentions made by counsel for the defendant with respect to a lack of infringement of these two patents. All of them impress me as being unsubstantial in character, in view of the great similarity of the defendant's apparatus to that of the plaintiff's. With respect to the pistol itself the defendant employs a somewhat different spring device for the feature of automatically gripping the cartridge in the barrel of the pistol. Nevertheless it performs the same function and is a mere mechanical alternate. The defendant uses the plain-

tiff's annular groove in the base of the cylinder, for holding it in the barrel of the pistol.

A somewhat different contention of non-infringement is made with respect to the second patent. Here it should be noted that the plaintiff's device illustrated in the drawings and described in some of the claims comprehends a cartridge casing or metal cylinder of larger diameter than the calibre of the pistol, but with a projecting rear stem or neck of sufficiently smaller diameter to slide within the barrel of the pistol. The principle of operation is however also applicable to a cylinder wholly of one diameter of diminished size capable of sliding within the barrel. The larger cylinder is used for a larger flare or signal device. In the order supplied to the Glenn L. Martin Co. the defendant made only the smaller cylinder of signal ammunition, and it should be compared with the smaller cylinders made by the plaintiff. It will be noted that in Claim 7 one of the combined elements is the presence of "a chamber for the expansion of the gases from the propelling charge, and said cartridge case having a loading chamber in front of said extension chamber with a projectile mounted," etc. The defendant says that its apparatus does not have "a chamber for the expansion of the gases from the propelling charge"; and therefore it does not infringe. An examination of the defendant's apparatus shows that in the base of the exterior cylinder the small open space (corresponding in position to the plaintiff's structure) is largely occupied by a felt washer; but apparently there is some small space for expansion of the gases in the defendant's apparatus, and the interstices or voids of the felt washer are said to serve the purpose, together with the space created by the exploded projectile. Another rather verbal point in support of the contention of non-infringement is based on the wording of the claim which refers to a loading chamber in front of the expansion chamber; and, as it is said there is no expansion chamber in the defendant's device, there could therefore be no loading chamber in front of it. This again I think is merely insufficient verbal criticism.

The validity and alleged infringement of the third patent remain for consideration. This is patent No. 1,947,834 issued to Driggs and Faber February 20, 1934 on application filed September 19, 1931. It is for an improvement in the construction of the projectile case of the earlier patents. In the specifications it is stated—"In particular, it is the object of this invention to provide a flare signal contained within a metallic case having an integral base and side walls, the base being heavier than the side walls, and the structure being preferably formed of a one-piece, drawn aluminum body, or other material of light weight and strength." Claims 1 and 12 may be taken as typical. They read as follows:

"1. In combination, a shell comprising a base and side wall of one piece of drawn metal, said base having an aperture, and a tubular eyelet having a shoulder inserted in said aperture, the shoulder thereon resting on the outside of the base of the shell.

"12. In combination, a one-piece cartridge case having an annular groove in the base thereof and a propelling charge chamber and a one-piece drawn shell of aluminum having a relatively heavy base and thin side walls adapted to telescopically fit within said cartridge case and rest on the base thereof forming the top of the propelling charge chamber, and a firing implement having means for detachably attaching said cartridge case therein."

The essential feature of this patent relates to the structure of the projectile casing of the fixed ammunition referred to in the prior patents; and the particularity of the construction is that the projectile case is made of one piece of aluminum and has a relatively heavy base and thin side walls. Although somewhat differently expressed in various claims, the emphasis in the specifications and claims is on this one-piece metal construction. In manufacture the projectile case is formed by a die pressing one piece of aluminum into the shape of the projectile case, forming a relatively heavy base and thin side walls. In result it is said that the metal is "extruded". As appears from the file wrapper of the patent there is nothing novel in this of itself.

The defendant contends that all the claims of the patent relied upon are anticipated by former patents to Driggs and Faber, Nos. 1,785,770 and 1,712,383 above referred to. I am not disposed to think that the patent is void for anticipation as claimed, but it is evident that it has only a very narrow scope and is therefore entitled to a much narrower range of equivalents, than the first two patents. It is in no sense a pioneer patent, but, if

valid, is limited (in combination with other elements specified in the claims) to the particular form of construction described, that is, a one-piece aluminum cylinder of "extruded" metal with a relatively heavy base and thin side walls. The patent has the presumption of validity from its grant by the Patent Office; but this is not fortified, as in the case of the other patents, by the feature of commercial success or exact reproduction by the defendant. It does not appear that the commercial success attained by the plaintiff's apparatus covered by the first and second patents depended upon this refinement or improvement in manufacture, which however very probably has contributed somewhat to the efficiency of operation of the plaintiff's whole apparatus.

Assuming the validity of this third patent, I nevertheless reach the conclusion after somewhat extended consideration, and it must be admitted with some hesitation, that it has not been infringed by the defendant. It is said that any valid patent is entitled to some range of equivalents, but I have not been able to satisfy myself that the defendant's construction should be regarded as a substantial equivalent in view of the very limited scope of the patent. It is true that a comparison of the two devices shows great similarity in general, but we must remember that on this particular point we are restricted to the exact construction of the projectile case as a part of the whole device. When the two structures are examined side by side, it is seen that the exterior cylinders, or cartridge cases, both in their bases and side walls, and in the annular groove around each base, are very similar, but this is a feature that was comprised in the first construction of the plaintiff's device and the emphasis here is not on the cartridge case but on the projectile case. It is true also that the defendant's construction of the projectile case has thin side walls as does the plaintiff's, but the important departure from the patent claim, and the explanation thereof in the specifications, lies in the fact that the defendant's projectile case is not made of one piece of "extruded" metal. On the contrary the aluminum cylinder is first made without any base at all; and then the bottom circumferential edge of the cylinder is slightly crimped, or turned over, forming a shoulder or a ledge on which is rested a heavy circular disc of aluminum, and the base is closed by setting below the crimped shoulder of the cylinder another separate thin piece of aluminum. Doubtless the purpose was to achieve as nearly as possible equally satisfactory efficiency in operation, but the method used is different and does not meet the requirements of the claim of the patent. The purpose of the relatively heavy base in the plaintiff's structure is to lessen the effects of the recoil from the discharge, and the defendant accomplishes this result in a different way and has also forborne the other advantages of the plaintiff's one-piece structure. If we were at liberty to treat the claim of this third patent in combination with the earlier patent, No. 1,712,383, it might be justifiable on a comparison of the whole of the two structures to treat the defendant's device as a substantial equivalent, but the two patents may not be so read together. See Altoona Publix Theatres, Inc. v. American Tri-Ergon Corp., 294 U.S. 477, 55 S.Ct. 455, 79 L.Ed. 1005.

On the whole case therefore I conclude that Claims 1 and 2 of patent No. 1,712,382 and Claims 2 and 7 of patent No. 1,712,383 are valid and have been infringed; and that no claims of patent No. 1,947,834 have been infringed. Counsel may submit an interlocutory judgment in accordance herewith.

### Supplemental Opinion on Form of Judgment.

An opinion on the validity and infringement of the patents was filed February 6, 1941. When the form of interlocutory judgment was submitted for consideration, counsel for the defendants objected to the inclusion therein of a reference to a master for accounting of profits and damages. After preliminary conference with counsel on both sides the case was set for further hearing on this point, with leave to the plaintiff to submit a brief amendment of the complaint if desired, and an opportunity to both parties to submit further testimony if desired. This further hearing has now been held and I have concluded, in view of the amendment made to the bill and the supplemental testimony, in connection with the testimony heretofore introduced, that there should be included in the interlocutory judgment a reference for an accounting of profits and damages, and I have accordingly signed the judgment as submitted by counsel for the plaintiff after some slight amendment voluntarily made by the plaintiff in consequence of formal

criticisms made by counsel for the defendants.

The principal objection made by the defendant to the provision for ascertainment of profits and damages is that no sufficient notice was given to the defendant with regard to the plaintiffs' patent claims as required by 35 U.S.C.A. § 49, R.S. § 4900, which reads as follows:

"49. *Patented articles marked as such; notice of infringement*

"It shall be the duty of all patentees and their assigns and legal representatives, and of all persons making or vending any patented article for or under them, to give sufficient notice to the public that the same is patented; either by fixing thereon the word 'patent,' together with the number of the patent, or when, from the character of the article, this can not be done, by fixing to it, or to the package wherein one or more of them is inclosed, a label containing the like notice: *Provided, however,* That with respect to any patent issued prior to April 1, 1927, it shall be sufficient to give such notice in the form following, viz.: 'Patented,' together with the day and year the patent was granted; and in any suit for infringement by the party failing so to mark, no damages shall be recovered by the plaintiff, except on proof that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented. R.S. § 4900; Feb. 7, 1927, c. 67, 44 Stat. 1058."

It will be noted that the statute provides that "no damages" shall be recovered by the plaintiffs unless (1) the patented goods are sufficiently stamped with a patent notice or (2) "that the defendant was duly notified of the infringement and continued, after such notice, to make, use, or vend the article so patented."

On the evidence the plaintiffs contend that they have complied with this statute both by giving notice to the public generally by stamping their patented articles, and also in the particular case by giving sufficient specific notice to the defendants. To the contrary the defendants contend that there was neither sufficient stamping nor individual notice. With respect to the stamping, I find from the evidence that the plaintiffs' patented articles sold to the public generally were sufficiently stamped; but the articles made by the plaintiffs for the United States Government, consisting of about sixty per cent. of all plaintiffs' arti-

cles manufactured prior to this suit, were not stamped; although the drawings in connection with the government specifications for the plaintiffs' articles contained a definite notation of the plaintiffs' patents. The decisions are to the effect that substantially all of the patentees' goods must be stamped; and therefore, if it is ultimately determined that the articles furnished by the patentees to the government in this case should have been stamped, in order to comply with the statute in this respect, it follows from the decisions that there can be no allowance of damages to the plaintiffs in this case, unless there was the individual notice of infringement given to them as required by the statute. Hazeltine Co. v. Radio Corp., D.C.N.Y., 20 F. Supp. 668, 672; General Motors Co. v. Leer Auto Supply Co., 2 Cir., 60 F.2d 902, 907; Matthews & Willard Mfg. Co. v. National Brass & Iron Works, C. C., 71 F. 518; Walker on Patents, 6th Ed., Vol. I, § 571. The evidence does not discuss the reason for the absence of the stamping on the goods supplied to the government, although the inference seems to be that it was in accordance with the government's requirements. The reason for the omission should be further explored and developed in the hearing before the master on the accounting. Until this is done there cannot be satisfactory final ruling on the point.

■ If it be ultimately held that the failure to stamp the government articles amounts to a failure to substantially comply with the requirement of the statute as to stamping, then the plaintiffs will not be entitled to damages unless the evidence sufficiently shows the individual notice to the defendants. As to this, the evidence so far developed shows as follows: The plaintiffs supplied an order of their patented goods to the Glenn L. Martin Company, one of the defendants, a year or so prior to the suit. The patented articles so supplied were presumably stamped. The goods were obtained by the Martin Company for re-sale and were re-sold to the Turkish Government. Some months prior to the institution of the present suit the Turkish Government desired a further quantity of the same or similar articles and the Martin Company requested bids therefor from the plaintiffs and also from the defendant, Triumph Explosives, Inc. The latter considerably underbid the plaintiffs for the order. On learning of the competition the president of the Kilgore Manufacturing

Company, one of the plaintiffs, in September 1939 had a personal conference with Mr. Bergdoff, the executive of the Martin Company having the matter in charge, and informed him that the articles to be thereafter supplied on the order by Triumph Explosives, Inc., would be an infringement of their patents. This testimony was uncontradicted, the defendants not having called Mr. Bergdoff as a witness. So far as the Martin Company is concerned, the notice appears to have been amply sufficient to comply with the statute. The Martin Company included in its contract with Triumph Explosives, Inc., an indemnification against patent infringement.

On behalf of Triumph Explosives, Inc., it is contended that there was no sufficient individual notice of infringement given by the plaintiffs, and I do not recall any evidence of a direct communication from the plaintiffs, or either of them, to Triumph Explosives, Inc., upon the subject of the patents; although it is conceded by counsel for the defendants that the executive officers (particularly Mr. Criswell) of Triumph Explosives, Inc., were fully aware of the plaintiffs' patents and indeed Mr. Criswell testified to the effect that he had been deterred from bidding on certain government specifications by reason of the plaintiffs' patents as he had seen a notation thereof on the government drawings. It was also in evidence that in 1936, in a patent infringement suit filed in this court by the patentees (No. 2453 Equity) based on their patent No. 1,947,834, against Triumph Explosives, Inc., the answer of the defendant pleaded plaintiffs' patents Nos. 1,712,382 and 1,712,383 as anticipations. But it is contended for Triumph Explosives, Inc., that notice or even absolute knowledge of the plaintiffs' patents is not sufficient to constitute the notice of infringement provided for in the statute; and that, in the absence of sufficient patent stamping, there can be no recovery of damages unless the defendant is expressly notified by the patentees that the particular articles they are making or proposing to make do or will constitute an infringement of the plaintiffs' patents. I find the decisions support this contention as a matter of law. Dunlap v. Schofield, 152 U.S. 244, 247, 248, 14 S.Ct. 576, 38 L.Ed. 426; Wine Rwy. Appliance Co. v. Enterprise Rwy. Equipment Co., 297 U.S. 387, 398, 56 S.Ct. 528, 80 L.Ed. 736; Horvath v. McCord Radiator Co., 6 Cir., 100 F.2d 326; Franklin Brass Foundry Co. v. Shapiro & Aronson, 3 Cir., 278 F. 435; Hazeltine Co. v. Radio Corp., D.C.N.Y., 20 F.Supp. 668; Son v. Pressed Steel Car Co., D.C.N.Y., 21 F.2d 528, 529; Parker Rust Proof Co. v. Ford Motor Co., D.C.Mich., 23 F.2d 502, 503. Cf. Oil Well Improvements Co. v. Acme Foundry Co., 8 Cir., 31 F.2d 898, 901; Weygandt Co. v. Van Emden, D. C., 40 F.2d 938, 940.

As there seems to have been sufficient individual notice to the Martin Company and as it has an indemnification agreement with Triumph Explosives, Inc., and as both corporations are understood to be thoroughly solvent, it may not be of great practical importance to the plaintiffs if they cannot directly hold Triumph Explosives, Inc., liable on the accounting. There is, however, a further point of evidence in the case bearing on the liability of Triumph Explosives, Inc. The complaint in this case was filed December 19, 1939 after a part of the order of the Martin Company had been filled by Triumph Explosives, Inc., but subsequent deliveries on the order were made in January 1940. It does not affirmatively appear what amount of the infringing articles was furnished after the filing of the bill. It is further contended by counsel for Triumph Explosives, Inc., that as it received no individual notice from the plaintiffs of the infringement prior to the filing of the suit, it cannot be held liable to account for infringing articles delivered after the filing of the suit. Support for this contention is found in a recent decision of District Judge Woolsey in Hazeltine Co. v. Radio Corp., D. C., 20 F.Supp. 668, 673. The particular point thus made is procedural rather than substantial. It is suggested that the proper procedure in such a situation is by a supplemental bill only. It will be noted that Judge Woolsey's decision was prior to the effective date of the new Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and it may be doubted whether the procedural difficulty still exists under the new rules. See also Allied Metal Stamping Co. v. Standard Electric Equipment Corp., D.C., 57 F.2d 296, 304. However, this, with other questions arising on the accounting, can be considered by the special master.

If the plaintiffs are debarred by lack of proper notice from recovering "damages" against either or both of the defendants, are they also precluded from recovering defendants' profits, if any?

The statute under consideration uses the word "damages" only. Does this include "profits" as well? The majority of the cases hold that it does. Flat Slab Patents Co. v. Turner, 8 Cir., 285 F. 257, 269; Franklin Brass Foundry Co. v. Shapiro & Aronson, 3 Cir. 278 F. 435; Son v. Pressed Steel Car Co., D.C.N.Y., 21 F.2d 528, 529. Numerous other cases to the same effect are reviewed in Flat Slab Patents Company v. Turner, supra. There are, however, decisions to the contrary. Rollman Mfg. Co. v. Universal Hardware Co., D.C.Pa., 207 F. 97, 107; Ashley v. Weeks-Numan Co., 2 Cir., 220 F. 899, 904; Churchward International Steel Co. v. Bethlehem Steel Co., D.C.Pa., 262 F. 438, reversed on other grounds, 3 Cir., 268 F. 361. There seems to be no clear decision of the Supreme Court on this point.

The question is one of statutory construction. The particular statute derives from the Act of Congress of July 8, 1870, c. 230, § 38, 16 Stat. 203, 35 U.S.C.A. § 49. By section 55 of the same statute, 16 Stat. 206, now, with some amendments, 35 U.S.C.A. § 70, power was given to courts of equity when granting injunctions in patent infringement cases, to award damages "in addition to the profits to be accounted for by the defendant[s]"; and by section 59 of the same statute, 16 Stat. 207, now 35 U.S.C.A. § 67, in suits at law for patent infringement authority was given to the court to award triple damages, according to the circumstances of the case. It is also to be borne in mind that prior to the Act of 1870 courts of equity taking jurisdiction of patent infringement cases by the grant of injunctions also had power as a matter of established equitable jurisprudence to award accounting for the infringer's profits as a measure of his damages. In Leman v. Krentler-Arnold Co., 284 U.S. 448, 456, 52 S.Ct. 238, 241, 76 L.Ed. 389, Chief Justice Hughes for the Supreme Court said with regard to damages and profits in patent infringement cases: "While the distinction is clear between damages, in the sense of actual pecuniary loss, and profits, the latter may none the less be included in the concept of compensatory relief. In a suit in equity against an infringer, profits are recoverable not by way of punishment but to insure full compensation to the party injured. * * *

In view of the principles governing the broader relief obtainable in equity, as contrasted with those applicable in courts of law, it is apparent that there is no necessary exclusion of profits from the idea of compensation in a remedial proceeding."

And in Tilghman v. Proctor, 125 U.S. 136, 148, 8 S.Ct. 894, 31 L.Ed. 664, the court said equity would award profits as an equitable measure of compensation, as an equivalent or substitute for legal damages.

It thus appears that before the Act of 1870, equity could award profits as a measure of compensation in lieu of damages as such, but could not award damages strictly considered until authority therefor was given by the Act of 1870; and it also appears that that Act itself made the distinction in certain sections between damages and profits, particularly section 55. If the matter were one of first impression, I would think there is much plausibility in the argument that the word "damages" as contained in section 38 of the Act of 1870 should be interpreted as limited to damages as such and not including in the generic sense profits as well. But as the subject has been heretofore very extensively considered in many cases and the great weight of authority is to the contrary, I feel constrained to follow what seems to be the established rule.

 Counsel for the defendants contend that there should be no reference at all for an accounting unless and until the court can first finally determine as a matter of law that the plaintiffs are entitled to some accounting. I do not think this is in accordance with the practice in this Circuit. It is sufficient at this stage of the case to find that there are prima facie substantial reasons for an accounting between the parties. The details as to the extent of the profits and damages, if any, and the time for which they must be allowed, and whether the stamping or notice in this case was sufficient, can be further developed and considered in the hearing before the master. It is not thought necessary at this time to judicially determine these matters in detail. See Orange-Crush Co. v. American Ornamental Bottle Co., 4 Cir., 60 F.2d 518, 520; Aronson v. Toy Devices, 3 Cir., 1 F.2d 91; Bishop & Babcock Co. v. Fulton Co., 6 Cir., 37 F.2d 293, 295.